**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

_____
:
ILLUMINA, INC. and SOLEXA, INC.,              :        CIVIL ACTION
                                              :
        Plaintiffs/Counterdefendants,         :
                                              :
                v.                            :        No. 10-649
                                              :
COMPLETE GENOMICS, INC.,                      :
                                              :
        Defendant/Counterclaimant.            :
_____:

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                    **NOVEMBER 9, 2010**

Presently pending before the Court is Defendant Complete Genomics, Inc.'s ("Complete Genomics") Motion to Transfer Pursuant to 28 U.S.C. § 1404. For the reasons set forth below, Complete Genomic's Motion is granted, and the case shall be transferred to the United States District Court for the Northern District of California.

**I.     BACKGROUND**

Plaintiffs Illumina, Inc. ("Illumina") and Solexa, Inc. ("Solexa") initiated the present action alleging that Complete Genomics is directly and/or indirectly infringing U.S. Patent Nos. 6,306,597 (the "'597 patent"), 7,232,656 (the "'656 patent"), and 7,598,035 (the "'035 patent") (collectively, the "patents-in-suit"). (Compl. at 1-8.) The patents-in-suit generally relate to genome sequencing and analysis for human DNA. (Id.) Illumina and Solexa allege that certain methods practiced by Complete Genomics concerning its human genome sequencing services

offered to its customers, under the moniker "Complete Genomics Analysis Platform" or "CGA Platform," infringe upon certain claims within their patents-in-suit. (Id.)

This action involves counterclaims by Complete Genomics against Illumina and Solexa seeking declaratory judgments regarding the invalidity and non-infringement of the patents-in-suit. (Countercls. at 18-20.) There is also a counterclaim against Illumina and Solexa for violation of the Sherman Act. (Id. at 21-23.) There is an additional counterclaim involving non-infringement issues alleging inequitable conduct by Illumina in its alleged misleading of the United States Patent & Trademark Office during reexamination of the '597 patent due to its inadequate disclosure of material documents arising from litigation relating to the '597 patent. (Id. at 20-21.)

Illumina is incorporated in Delaware with its principal place of business in San Diego, California. (Compl. ¶ 3.) On February 8, 2010, Solexa merged into Illumina. (Id. ¶ 4.) Prior to merging with Illumina, Solexa was incorporated in Delaware with its principal place of business in Hayward, California. (Id.) Complete Genomics is incorporated in Delaware with its principal place of business in Mountain View, California. (Id. ¶ 5.)

II.     **LEGAL STANDARD**

28 U.S.C. § 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The Court's § 1404(a) analysis must be done on an individualized case-by-case consideration of convenience and the interests of justice." Teleconference Sys. v. Proctor & Gamble Pharm., Inc., 676 F. Supp. 2d 321, 329 (D. Del. 2009) (citation and internal quotation marks omitted). A general principal guiding the

Court's analysis is that the moving parties bear the burden of showing that a change of venue is appropriate. Id. Additionally, it is the movants' burden to "'establish that the balance of convenience of the parties and witnesses strongly favors the defendants.'" Id. (quoting Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981)); see also Shutte v. ARMCO Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) ("[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail" because plaintiff's choice of forum is a "paramount consideration" in deciding a motion to transfer venue).

In considering a motion to transfer under § 1404(a), courts do not limit their consideration to the three factors enumerated in the statute, but instead "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). When determining whether to transfer a case pursuant to Section 1404(a), courts in the Third Circuit apply the public and private interest factors delineated in Jumara. See Mallinckrodt, Inc. v. E-Z-Em Inc., 670 F. Supp. 2d 349, 356 (D. Del. 2009) ("In determining whether to transfer a case pursuant to § 1404(a), courts in the Third Circuit apply the public and private interest factors outlined in Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995).").

Courts consider the following private interests: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the fora; and (6) the location of books and records, again, only to the extent that they may not be available in one of the fora. Jumara, 55 F.3d at 879. Courts consider the

3

following public interests: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in the controversy; (5) public policies of the fora; and (6) the trial judge's familiarity with the applicable state law in diversity cases.  Id. at 879-80.  If the factors are evenly balanced or weigh only slightly in favor of the transfer, a transfer will be denied.  Cont'l Cas. Co. v. Am. Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999).

### III.  DISCUSSION

As a threshold matter, it is undisputed that Illumina and Solexa could have brought this action in the Northern District of California Court.  See 28 U.S.C. §§ 1391(c), 1400(b).  Consequently, the Court's sole task is to determine, by balancing the private and public interest factors, whether a transfer of this action is in the interest of justice and convenient for the parties as required under Section 1404(a).  After balancing the pertinent factors, the Court finds that the relevant interests strongly weigh in favor of transfer.

#### A.  Private Interest Factors

##### 1.  The Parties' Choice of Forum & Where the Claim Arose

Plaintiffs prefer Delaware as a forum for this action.  Generally, a plaintiff's choice of forum is "paramount" and should not be "lightly disturbed."  Shutte, 431 F.2d at 25; Jumara, 55 F.3d at 879-80.  The Court shall give Plaintiffs' choice of forum substantial weight because the choice of forum relates to their legitimate, rational concerns associated with being incorporated in Delaware.  Teleconference Sys., 676 F. Supp. 2d at 330 ("[U]nder § 1404(a), absent a legitimate, rational reason, if the plaintiff chooses to litigate away from his or her 'home turf,'

the defendant's burden is lessened."); Waste Distillation Tech., Inc. v. Pan Am. Res., Inc., 775 F. Supp. 759, 764 (D. Del. 1991) (under Section 1404(a), "home turf" refers to a corporation's principal place of business); see also Mallinckrodt, 670 F. Supp. 2d at 356 (according Plaintiffs' decision to litigate in Delaware significant deference since Plaintiffs' choice of Delaware as a forum relates to their legitimate, rational concerns as Delaware corporations, and "when a corporation chooses to incorporate in Delaware and accept the benefits of incorporating in Delaware, it cannot complain once another corporation brings suit against it in Delaware"). Thus, even if it would be more convenient for Illumina and Solexa to litigate in their "home turf" of California, their choice of forum should not be lightly disturbed.

Complete Genomics prefers the Northern District of California as a forum for this action. All of the parties are incorporated in Delaware and, therefore, Complete Genomics cannot complain about the decision by Illumina and Solexa to bring suit there. See Mallinckrodt, 670 F. Supp. 2d at 356. Complete Genomics does, however, argue that the Northern District of California is a more suitable forum because "[t]his is a California dispute." (Def.'s Opening Br. Supp. Mot. Transfer Pursuant to 28 U.S.C. § 1404(a) at 1.) Specifically, it argues that all of the parties' principal places of business are located in California, all of the alleged directly infringing activity occurred in California, and most of the likely witnesses and documents are located in California. (Id. at 1-2; Decl. of Alan E. Dow in Supp. of Def.'s Mot. to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Dow Decl.") ¶¶ 4-9.)

Other than the parties' incorporation, Complete Genomics argues that Delaware has no connection to this litigation. (Def.'s Opening Br. Supp. Mot. Transfer Venue Pursuant to 28 U.S.C. § 1404(a) at 2.) Complete Genomics asserts that no party has an office

located in Delaware, no witnesses, tangible items or documents are located in Delaware, and no allegedly infringing activity occurred in Delaware. (Id. at 2-3.) According to Complete Genomics, it does not have any customers in Delaware. (Id. at 3; Dow Decl. ¶ 9.) Illumina and Solexa attempt to counter Complete Genomics' claims by asserting that Complete Genomics erroneously labels itself as a "regional enterprise" in California because it sells its services nationwide. (Pls.' Opp'n to Def.'s Mot. to Transfer at 4-5.) Illumina and Solexa show that Complete Genomics has customers on the East Coast; however, they fail to establish any allegedly infringing activity, or allegedly infringing services/products being sold, in Delaware. The fact that the parties and this case have significant ties to California, and the lack of any meaningful contacts with Delaware, weighs in favor of transfer to California.

    2. Convenience of the Parties and Witnesses & Location of Books and Records

"The convenience of the parties and witnesses, and the location of relevant evidence, are the most important factors in the § 1404(a) analysis." Teleconference Sys., 676 F. Supp. 2d at 331. The Northern District of California is convenient for the parties because their headquarters are located there.[1]  See Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 202 (D. Del. 1998)

---

[1] The headquarters of Complete Genomics is located in the Northern District of California in Mountain View, California. (Def.'s Opening Br. Supp. Mot. Transfer at 4; Dow Decl. ¶ 3; Decl. of Katherine R. LaBarre in Supp. of Def.'s Mot. to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("LaBarre Decl."), Exh. 16.) All of its operations and the vast majority of its employees are located in its Northern California facilities in Mountain View and Sunnyvale, California. (Def.'s Opening Br. Supp. Mot. Transfer at 5; Dow Decl. ¶ 5.). Complete Genomics sequences human genomes exclusively at its Mountain View facility. (Id.; Dow Dec. ¶ 3-4.) Illumina's headquarters are located in the Southern District of California in San Diego, California. (Compl. ¶ 3.) Until its merger with Illumina in 2010, Solexa's principal place of business was in Hayward, California, which is located in Northern California. (Id. ¶ 4.) Its former headquarters is now a manufacturing, research, and development facility for "Illumina Hayward." (Def.'s Opening Br. Supp. Mot. Transfer at 5; LaBarre Decl., Exhs. 13-14.)

("[B]y transferring these two cases to the Northern District of California, the Court would, to some extent, convenience all of the parties since they are located in Silicon Valley."); see also Derry Fin. N.V. v. Christiana Co., Inc., 555 F. Supp. 1043, 1046 (D. Del. 1983) (refusing to transfer a case when it would not reduce the overall level of convenience, but would shift the inconvenience from one party to another).  Consequently, Delaware is equally inconvenient for all of the parties.  The parties would be required to travel over six thousand miles in order to litigate this action before the Delaware District Court.  Illumina and Solexa have not successfully disputed Complete Genomics' claim that the Northern District of California is the least expensive forum and most efficient venue to litigate this action because the parties and an overwhelming majority of the evidence are located there or nearby in California.  While it does not appear that litigating in Delaware would impose an undue financial burden on the parties, it is clear that litigating the action in the Northern District of California would minimize the cost and level of disruption on some of the day-to-day business operations caused by trial or other legal proceedings.  Due to the parties' significant contacts with California, and minimal contacts with Delaware, there is no question that California is a more convenient forum for the parties.  Therefore, this factor weighs strongly in favor of transferring this action to California.

The convenience of the witnesses also favors transfer.  Party witnesses or witnesses who are employed by a party carry no weight in this analysis because each party is able and obligated to procure the attendance of its own employees for trial.  Affymetrix, 28 F. Supp. 2d at 203.  The convenience of witnesses is only considered, however, "to the extent that the witnesses may actually be unavailable for trial in one fora."  Jumara, 55 F.3d at 879.  Complete Genomics has identified a non-party witness, named Stephen C. Macevicz, Ph.D., J.D., who is likely to play an

important role in this litigation, and may be unavailable to testify in Delaware.  Dr. Macevicz is a resident of California.  (Def.'s Opening Br. Supp. Mot. Transfer at 6; La Barre Decl., Exh. 24.)  Complete Genomics asserts that Dr. Macevicz is a material third-party witness because he is the sole inventor of two of the three patents-in-suit (the '597 and the '035 patents), and the inequitable conduct counterclaim at suit involves, in part, actions and legal advice rendered by him regarding the '597 patent.  (Def.'s Opening Br. Supp. Mot. Transfer Pursuant to 28 U.S.C. § 1404(a) at 5-6.)  It does appear that Dr. Macevicz is a central witness to this case who, due to his residency in California, is within the subpoena power of the District Court for the Northern District of California, but is outside the subpoena power of the Delaware District Court.[2]

Likewise, Complete Genomics argues that two other material third-party witnesses, including the attorney and patent agent who prosecuted the '597 and '035 patents, along with four key prior art witnesses are located within the Northern District of California.[3]  (Def.'s

---

[2]Rule 45(b)(2) of the Federal Rules of Civil Procedure provides, in pertinent part, that a subpoena may be served at any place within the district of the issuing court or outside that district, but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection.  Fed. R. Civ. P. 45(b)(2)(A), (B).

[3]There is a dispute about the residency of one of the patent prosecutors, LeeAnn Gorthey.  Illumina and Solexa argue that she lives and works in Portland, Oregon.  (Pls.' Opp'n to Def.'s Mot. to Transfer at 13-14.)  They do, however, acknowledge that she is associated with King & Spalding's Silicon Valley office.  (Id. at 13 n.4.)  Relying upon Federal Rule of Civil Procedure 45(c)(3)(A)(ii), which provides that persons may be subpoenaed within 100 miles of their residence, or place of employment, or where they regularly conduct business in person, Complete Genomics argues that LeeAnn Gorthey's employment in the Silicon Valley Office of King & Spalding subjects her to a subpoena within the Northern District of California.  (Def.'s Reply Br. in Supp. Mot. to Transfer Pursuant to 28 U.S.C. § 1404(a) at 4 n.1; LaBarre Decl., Exh. 30.)  Based upon the evidence presented by the parties, the Court finds that LeeAnn Gorthey is subject to subpoena in the Northern District of California.  This finding is not dispositive of the Court's analysis of whether transfer is warranted in this action.
   Also, there is no dispute that the three listed inventors of the '656 patent are located in the

Opening Br. Supp. Mot. Transfer at 6; La Barre Decl. ¶¶ 32, 35-36, 39-40, Exhs. 30-33.) Complete Genomics also asserts that another three prior art witnesses are located elsewhere in California.[4]  (Id.; LaBarre Decl. ¶ 40, Exhs. 34-36.)  Illumina and Solexa argue against the materiality of some of these witnesses, as well as their locations; however, they, notably, fail to identify any witnesses within the subpoena power of the Delaware District Court.  Their failure to identify any material witness who resides in Delaware is discerning and weighs in favor of transfer.  See In re Genentech, Inc., 566 F.3d at 1345 ("Because a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas, the district court clearly erred in not determining this factor to weigh substantially in favor of transfer."); Teleconference Sys., 676 F. Supp. 2d at 332 ("The fact that plaintiff has not identified a single material witness who resides in Delaware rather than California is telling and weighs in favor of transfer.").  The convenience and availability of witnesses is a significant factor that weighs strongly in favor of transfer of this case to the Northern District of California.

---

United Kingdom.  If the United Kingdom witnesses testify, they will be required to travel a great distance no matter where the case is tried, and will only be slightly more inconvenienced with the case being held in California as opposed to Delaware.  See In re Genentech, Inc., 566 F.3d 1338, 1344 (Fed. Cir. 2009) ("The witnesses from Europe will be required to travel a significant distance no matter where they testify."); Mekiki Co., Ltd. v. Facebook, Inc., No. 09-745-JAP, 2010 WL 2348740, at *3 (D. Del. June 7, 2010) ("In this case, Plaintiff's principal place of business is in Tokyo, Japan, making significant travel for Plaintiff inevitable whether the case proceeds in Delaware or California.").

[4]The Northern District of California's subpoena power extends throughout the state of California pursuant to Rule 45 of the Federal Rules of Civil Procedure, which provides that a subpoena may be served anywhere within the state of the issuing court if a state statute allows state-wide service of a subpoena issued by a state court of general jurisdiction.  See Fed. R. Civ. P. 45(b)(2)(C). Section 1989 of the California Code of Civil Procedure authorizes state-wide service.

Regarding the location of evidence, a court should only consider the location of books and records to the extent that the files could not be produced in the alternative forum. Jumara, 55 F.3d at 879. "The technological advances of recent years have significantly reduced the weight of this factor in the 'balance of convenience' analysis . . . by substantially reducing the burden of litigating in a distant forum." Affymetrix, 28 F. Supp. 2d at 205 (quotation and internal citation omitted). Since the majority of relevant documents in this case are located at Complete Genomics' headquarters and facilities in the Northern District of California, and it does not appear that such records cannot be produced in Delaware, this factor weighs minimally in favor of transfer. See In re Genentech, Inc., 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.") (citation omitted); Affymetrix, 28 F. Supp. 2d at 205 ("Thus, while all of the relevant documents (including numerous laboratory notebooks) are apparently located in the Northern District of California, this factor weighs only minimally in favor of transfer.).

In conclusion of the analysis of the relevant private interest factors, the Court concludes that the balance of the factors weighs strongly in favor of transferring this case to the Northern District of California.

### B. Public Interest Factors

The public interest factors of the enforceability of judgment, the public policies of the fora, and the familiarity of the trial judge with applicable state law are all neutral since the

parties do not argue these factors. Additionally, the local interest factor is also neutral because "patent issues do not give rise to a local controversy or implicate local interests." TriStrata Tech., Inc. v. Emulgen Labs., Inc., 537 F. Supp. 2d 635, 643 (D. Del. 2008); see also Angiodynamics, Inc. v. Vascular Solutions, Inc., No. 09-554-JJF, 2010 WL 3037478, at *3 (D. Del. July 30, 2010); Acuity Brands, Inc. v. Cooper Indus., Inc., No. 07-444-GMS, 2008 WL 2977464, at *3 (D. Del. July 31, 2008) ("[I]t is well settled that patent rights are not considered state or local matters and do not implicate local interests."). The Court notes that while Delaware has an interest in this litigation which involves corporations incorporated there, Mallinckrodt, 670 F. Supp. 2d at 357, California also has a similar interest regarding its corporate citizens. See Pfizer Inc. v. Sandoz Inc., No. 09-742–JJF, 2010 WL 256548, at *5 (D. Del. Jan. 20, 2010).

Likewise, the court congestion factor is neutral in light of the statistical evidence provided by the parties. Although the parties presented various arguments and statistical reports concerning court congestion in the fora at issue, neither side clearly shows that the administrative difficulty resulting from court congestion weighs in favor of one forum over the other. It is important to note, however, that even though there is presently a backlog of cases in Delaware, the cases are being assigned to other district courts in the Third Circuit which are capable of efficiently and expeditiously managing the cases. Thus, the administrative difficulty resulting from court congestion in either fora is a factor that neither weighs in favor nor against transfer.

1. Practical Considerations Making Trial Easier, Quicker, Or Less Expensive

The only remaining public interest factors are the practical considerations that could make the trial easier, quicker, or less expensive. Jumara, 55 F.3d at 879-80. As is made clear from the previous discussion on convenience of the witnesses and parties, some of the practical considerations heavily favor transfer to the Northern District of California. Considering the physical distance of the parties to Delaware, and the parties' close proximity to the Northern District of California, the Northern California District Court is clearly a more convenient forum. Most of the potential and identified witnesses, and relevant records and evidence, are located in the Northern District of California. It has subpoena power that it can exercise over a number of important witnesses in this case; as opposed to Delaware which is lacking subpoena power over such witnesses. All of the parties are headquartered in California; therefore, transferring this case to the Northern District of California Court will lessen the expense and disruption to their day-to-day business operations.

Regarding judicial economy, Illumina and Solexa assert that this Court should not transfer this case because it is adjudicating another action, Life Tech. Corp. v. Illumina, Inc. and Solexa, Inc, No. 09-cv-706, which is a patent infringement action involving, among other issues, counterclaims by Illumina and Solexa pertaining to the '656 patent and the '035 patent. Illumina and Solexa assert that judicial economy will be better served if this Court hears this case because it is already familiar with the '656 and '035 patents. In contrast, Complete Genomics asserts that judicial economy is better served by transferring this action to the Northern District of California because it previously adjudicated an action involving the '597 patent, Applera Corp.-Applied Biosystems Group v. Illumina, Inc., Solexa, Inc. and Macevicz, No. 07-cv-2845, and the

inequitable conduct claim in this action is related, in part, to such adjudication. According to Complete Genomics, the Honorable William Alsup presided over the action and is familiar with the extensive record developed in the case regarding the '597 patent.[5] (Def.'s Reply Br. in Supp. Mot. to Transfer Pursuant to 28 U.S.C. § 1404(a) at 6-9.)

I am currently presiding over Life Tech v. Illumina. While it is a patent infringement case which concerns the '656 and '035 patents, it also involves several other patents not at issue in this case, as well as different accused products and alleged infringing activities. Although Life Tech has Illumina named as a Defendant, Counter-Claimant, and Counter-Defendant, it also involves six other parties, none of which are Complete Genomics. Notably, the instant action also involves alleged infringing issues regarding the '597 patent, as well as an inequitable conduct counterclaim regarding its reexamination, and a counterclaim alleging violation of the Sherman Act. This case significantly differs from the Life Tech. v. Illumina action because it involves: different parties; different accused products/services; an additional patent (the '597 patent) is at issue; an inequitable conduct claim regarding the '597 patent is at issue; and a Sherman Act violation counterclaim is asserted. Thus, further discovery and claim construction will have to be performed in the instant action, and it is not apparent that judicial economy will be aided by keeping the action. See Mallinckrodt, 670 F. Supp. 2d at 357-58 (acknowledging that transfer is appropriate in the interest of justice when a related litigation in a transferee forum involves the same parties, similar technologies, and a common field of prior art, but rejecting

---

[5] Complete Genomics has expressed its intent to file an administrative motion requesting that Judge Alsup preside over this case if it is transferred to the Northern District of California. (Def.'s Opening Br. Supp. Mot. Transfer at 9 n.3.) The Court notes that such intention is not dispositive because it is unknown if the request will be granted or denied, and there is no way that Complete Genomics can guarantee that the action will be before Judge Alsup.

Defendants' argument seeking transfer due to a pending action in Texas unconvinced that "the present action is so related to the Texas Action that a transfer is required"); Ethicon Edno-Surgery, Inc. v. Hologic, Ins., No. 09-580-JJF, 2009 WL 3333933, at *3 (D. Del. Oct. 15, 2009) ("Where litigation involving the same parties and similar technologies is currently pending in another district, transfer is often favored.").

Similarly, while the Northern District of California Court may have had an action involving the '597 patent, it is not clear that judicial economy is aided by transfer to that court since there is no guarantee that the action will be assigned to the judge who presided over the prior action involving the '597 patent, and litigating this case requires further discovery and claim construction regarding the '656 and '035 patents, as well as further proceedings and discovery regarding the inequitable conduct and Sherman Act violation counterclaims. Consequently, the judicial economy of transferring this action is questionable at best, and shall be considered as neutral in this Court's analysis.

In conclusion of the analysis of all of the relevant public interest factors, the court concludes that the balance of the factors weighs strongly in favor of transferring this case to the Northern District of California. While some of the public interest factors are neutral, the other practical considerations set forth above strongly weigh in favor of transfer.

IV. <u>CONCLUSION</u>

Other than the parties' incorporation, Delaware has a limited connection to this action. In contrast, the Northern District of California has a substantial connection to this litigation, and is clearly more convenient than Delaware. The parties all have their principal place of business there. Most of the potential and identified witnesses, as well as relevant records and evidence, are located in California. It is a more convenient forum for all of the parties, and has usable subpoena power which may be necessary in this case. Any directly infringing activity allegedly occurred in California. See Ricoh Co., Ltd. v. Aeroflex Inc. 279 F. Supp. 2d 554, 558 (D. Del. 2003) (transferring a case relying, in part, on the fact that no party maintains any facilities, personnel, or documents in Delaware, no acts of alleged infringement took place in Delaware, and no relevant third-party witnesses reside in Delaware). Delaware is a rational choice of forum chosen by Illumina and Solexa due to the parties' incorporation and, therefore, should not be lightly disturbed. However, "[w]here an alternative forum is more convenient and has more substantial connection with the litigation, incorporation in Delaware will not prevent transfer." APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc., 295 F. Supp. 2d 393, 398-99 (D. Del. 2002); see also Teleconference Sys., 676 F. Supp. 2d at 333-34 ("Plaintiff's choice is an important but not determinative factor, especially where plaintiff and its claim have no significant nexus to Delaware."); Mekiki, 2010 WL 2348740, at *4 (stating that "it is clear that a party's incorporation in Delaware is not dispositive of a motion to transfer"). After considering the above private and public factors, this Court finds that they balance strongly in favor of transfer to the Northern District of California. For these reasons, Complete Genomic's Motion to Transfer Pursuant to 28 U.S.C. § 1404 is granted.

An appropriate Order follows.