1  Michael J. Malecek (State Bar No. 171034)
   Email address:  michael.malecek@kayescholer.com
2  Sean Boyle (State Bar No. 238128)
   Email address:  sean.boyle@kayescholer.com
3  Marisa Armanino Williams (State Bar No. 264907)
   Email address:  marisa.armanino@kayescholer.com
4  KAYE SCHOLER LLP
   Two Palo Alto Square, Suite 400
5  3000 El Camino Real
   Palo Alto, California  94306
6  Telephone:  (650) 319-4500
   Facsimile:  (650) 319-4700
7
   Attorneys for Defendant
8  COMPLETE GENOMICS, INC.

9

10                    UNITED STATES DISTRICT COURT

11             FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

    ILLUMINA, INC., and SOLEXA, INC.,         )   Case No. 3:10-cv-05542 EDL
13                                            )
                   Plaintiffs,                )   **DEFENDANT COMPLETE GENOMICS,**
14                                            )   **INC.'S REPLY IN SUPPORT OF**
           v.                                 )   **MOTION FOR SUMMARY JUDGMENT**
15                                            )   **OF INVALIDITY**
    COMPLETE GENOMICS, INC.,                  )
16                                            )   Date:        September 4, 2012
                   Defendant.                 )   Time:        2:00 P.M.
17                                            )   Place:       Courtroom E, 15th Floor
                                              )
18                                            )
                                              )
19                                            )
20  _____ )

21

22

23

24

25

26

27

28

KAYE SCHOLER LLP

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................... 1

II.    ARGUMENT ................................................................................................... 2

    A.    Because Illumina Cannot Swear Behind Southern, Southern is Invalidating Prior Art ................................................................................... 2

        1.    Illumina Concedes Southern Anticipates Claims 1, 9, 10, And 17-19 ...... 2

        2.    Illumina Cannot Establish Diligence During The Critical Period ............. 2

            (a)    There Is No Evidence, Other Than Dr. Macevicz's Bare Assertions, Of Activity During The Critical Period ...................... 3

            (b)    The Metadata Introduced By Illumina For The First Time Fails To Corroborate Dr. Macevicz's Bare Assertions Of Diligence ........................................................................................ 4

            (c)    Dr. Macevicz Admits That He Prioritized His Free Time For Other Projects And Did Not Work Continuously On The '597 Patent Application ..................................................................... 5

        3.    Illumina Cannot Show An Excuse For Dr. Macevicz's Inactivity ............. 6

            (a)    Dr. Macevicz's Commonplace Work Obligations Cannot Excuse Inactivity ......................................................................... 6

            (b)    Dr. Macevicz's Choice To Work On The Brenner Applications In His Free Time Cannot Excuse Inactivity ................ 7

    B.    The Factual Disclosures Of The Prior Art Leave No Room For Genuine Dispute ................................................................................................ 8

        1.    The Court's Claim Constructions Place The Claims Squarely In The Prior Art .................................................................................... 9

        2.    Illumina Concedes That Southern Invalidates Claims 1, 9, 10, And 17-19 ....................................................................................... 10

        3.    Illumina Does Not Contest The Inventor's View That If The '597 Patent Claims Were Not Limited To Successive Ligation, Then Whiteley Invalidates ............................................................................. 11

            (a)    Illumina's Last Ditch Effort To Claim Assignor Estoppel Will Not Help ................................................................................. 12

        4.    Illumina Makes The Same Arguments Regarding The Martinelli Prior Art As It Did Regarding The Whiteley Prior Art .......................... 13

        5.    Dr. Macevicz Admits That He Copied The Brenner Prior Art And That The Alleged Invention Of The '597 Patent Was An "Outgrowth" Of That Copied Prior Art ............................................... 15

III.    CONCLUSION ............................................................................................. 15

KAYE SCHOLER LLP

REPLY IN SUPPORT OF MSJ OF INVALIDITY          Case No. 3:10-cv-05542 EDL

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3    *Courson v. O'Connor*,
        227 F. 890 (1915) ...................................................................................................... 7

4    *D'Amico v. Koike*,
5        347 F.2d 867 (C.C.P.A. 1965)................................................................................... 3

6    *Diamond Scientific Co. v. Ambico, Inc.*,
        848 F.2d 1220 (Fed. Cir. 1988) ............................................................................... 13

7    *Feinberg v. Cowan*,
8        29 App.D.C. 80, 1907 WL 19764 (1907) .................................................................. 7

9    *Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc.*,
        No. C03-01431SBA, 2005 WL 2043047 (Aug. 24, 2005) ......................................... 9

10   *Gallagher v. Hien*,
        25 App.D.C. 77, 1905 WL 17692 (1905) .................................................................. 7

11   *Gould v. Schawlow*,
        363 F.2d 908 (C.C.P.A. 1966) ................................................................................... 5

12   *Griffith v. Kanamuru*,
        816 F.2d 624 (Fed. Cir. 1987) ............................................................................... 6, 8

13   *In re Meyer Mfg. Corp.*,
14       411 F. App'x 316 (Fed. Cir. 2010) ........................................................................... 4

15   *In re Mulder*,
        716 F.2d 542 (Fed. Cir. 1983) ................................................................................... 6

16   *Jacobs Vehicle Equipment Co. v. Pacific Diesel Brake Co.*,
        829 F. Supp. 2d 11 (D. Conn. 2011) ......................................................................... 9

17   *Kendall v. Searles*,
        173 F.2d 986 (C.C. P.A. 1949).................................................................................. 4

18   *Loral Fairchild Corp. v. Victor Co. of Japan*,
19       931 F.Supp. 1014 (E.D. NY 1996)............................................................................ 2

20   *Moore U.S.A., Inc. v. Standard Register Co.*,
        229 F.3d 1091 (Fed. Cir. 2000) ............................................................................... 15

21   *Morway v. Bondi*,
        97 U.S.P.Q. 318 (C.C.P.A. 1953) .............................................................................. 7

22   *Pandrol USA LP v. Airboss Ry Products, Inc.*,
        No. 99-182, 2003 WL 24272366 (W.D. Mo. Oct. 15, 2003)................................... 13

23   *QG Prods., Inc. v. Shorty, Inc.*,
        992 F.2d 1211 (Fed. Cir. 1993) ............................................................................... 13

24   *Quad Environmental Technologies Corp. v. Union Sanitary Dist.*,
25       946 F.2d 870 (Fed. Cir. 1991) ................................................................................... 9

26   *Reed v. Tornqvist*,
        436 F.2d 501 (C.C.P.A. 1971) ................................................................................... 6

27   *Rey-Bellet v. Engelhardt*,
        493 F.2d 1380 (C.C.P.A. 1974)................................................................................. 6

28

KAYE SCHOLER LLP

ii

*Robinson v. Copeland,*
    24 App.D.C. 68, 1904 WL 19049 (1904) ............................................................................ 7

*Shamrock Technologies, Inc. v. Medical Sterilization, Inc.,*
    903 F.2d 789 (Fed. Cir. 1990) ........................................................................................... 13

*Southwall Techs., Inc. v. Cardinal IG Co.,*
    54 F.3d 1570 (Fed. Cir. 1995) ............................................................................................ 9

*Telemac Cellular Corp. v. Topp Telecom, Inc.,*
    247 F.3d 1316 (Fed. Cir. 2001) ........................................................................................ 15

*Texas Co. v. Globe Oil & Refining Co.,*
    112 F. Supp. 455 (N.D. Ill. 1953) ....................................................................................... 6

KAYE SCHOLER LLP

iii

KAYE SCHOLER LLP

# I.    INTRODUCTION

This is a simple case.  Illumina stipulated in a previous case that claim 1 of the '597 patent was invalid over the Southern prior art.  Now, Illumina recants, and urges the Court to find that Southern should not be considered prior art at all.  This last ditch and drastic maneuver, called "swearing behind," is underscored by Illumina's concession that Southern invalidates all but two claims of the '597 patent.  While Illumina filed reams of paper to create the appearance of a complicated set of disputed facts, the record actually compels a finding that the asserted claims are invalid.  To save the patent, Illumina must show that Dr. Macevicz, the inventor, diligently worked on his priority application in the critical period by presenting evidence of specific facts and times.

But the record is devoid of any evidence of diligence.  The evidence needed to corroborate Dr. Macevicz's speculative assertion that he "would have done most of the work" during the critical period does not exist.  Barring proof of diligence, Illumina proffers evidence of excuse—a very high burden to meet.  That the inventor was employed full-time and undertook elective side projects instead of diligently working on the '597 priority application does not come close to the level of proof required to demonstrate excuse.  Without a showing of diligence or excuse, Southern is properly admitted, and invalidates the patent claims.

Beyond Southern, the Whiteley, Martinelli, and Brenner prior art invalidate the '597 patent claims.  Illumina cannot attempt to sidestep this art, as they are not subject to antedating.  Illumina cannot escape the opinion of the inventor himself, Dr. Macevicz, that Whiteley would invalidate his patent if the "Repeating element" were not limited to successive ligation.  In fact, the claim construction that Illumina sought broadened the claim scope such that there are now *four* different ways to meet the "Repeating element."  For much of the factual evidence, Illumina appears to concede that there are no disputes.[1]  Thus, the Court should grant summary judgment

---

[1] Illumina failed to respond to a large majority of the factual evidence CGI put forward supporting its contentions that the prior art anticipated the claims of the '597 patent, and CGI requests that the Court deem these facts undisputed.  *See* Fed. R. Civ. P. 56(e) (stating that "[i]f a party fails to … properly address another party's assertion of fact as required by Rule 56(c), the court may…(2) consider the fact undisputed for the purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including facts considered undisputed—show that the movant is entitled to it….").

REPLY IN SUPPORT OF MSJ OF INVALIDITY                    Case No. 3:10-cv-05542 EDL

of invalidity as to claims 1, 9, 10, and 14-19 of the '597 patent.

## II.   ARGUMENT

A.   Because Illumina Cannot Swear Behind Southern, Southern is Invalidating Prior Art

    1.   Illumina Concedes Southern Anticipates Claims 1, 9, 10, And 17-19

Illumina offers no meaningful opposition to CGI's key point that Illumina fails to make a showing of reasonable diligence sufficient to support its attempt to "swear behind" Southern's U.S. priority date.  As shown below, Illumina fails to identify any evidence that corroborates Dr. Macevicz's naked, mealy-mouthed claim of diligence during the critical period.  The conclusion that Illumina cannot swear behind Southern disposes of a host of claims of the '597 patent.  In addition to claim 1, which Illumina previously stipulated is invalid as anticipated by Southern, Illumina concedes that claims 9, 10, 17, 18, and 19 are anticipated if the Court concludes that Illumina has failed to make the requisite showing of reasonable diligence and cannot therefore swear behind Southern.  Illumina concedes this point, as it does not offer any response at all to CGI's argument that Southern anticipates these claims.  Illumina only contests that claims 14 and 15 are not anticipated and/or made obvious by Southern.  Dkt. No. 177 at 13-16.  Illumina's arguments as to claims 14 and 15, however, fail to show that there is any genuine dispute of material fact.  In sum, the Court should find that Illumina has failed to make the requisite showing of reasonable diligence and cannot swear behind Southern, that this finding directly disposes of the uncontested claims (1, 9, 10, 17, 18, and 19) as invalid as anticipated by Southern, and that claims 14 and 15 likewise are invalid as anticipated by Southern.

    2.   Illumina Cannot Establish Diligence During The Critical Period

Illumina may antedate Southern's U.S. priority date only if it can show that Dr. Macevicz "conce[ived] of the invention before publication of [Southern], coupled with reasonable diligence from a date before publication to reduction to practice." *Loral Fairchild Corp. v. Victor Co. of Japan*, 931 F. Supp. 1014, 1027 (E.D.N.Y. 1996) (citing *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d

1572, 1576-77 (Fed. Cir. 1996)).[2] In this case, the critical period—that is, the period in which Dr. Macevicz must have been continuously diligent—is from a date prior to the February 9, 1995 U.S. publication date of Southern to the date of constructive reduction to practice, April 17, 1995. Illumina states that Dr. Macevicz was very busy and could only work on the '597 priority application "on nights and weekends." Dkt. No. 177 at 5. These facts (which Illumina proffers in a futile effort to excuse Dr. Macevicz's lack of diligence) are uncontested. Illumina fails to offer corroborating evidence of diligence, as required, and therefore cannot, as a matter of law, show diligence.

> (a)  There Is No Evidence, Other Than Dr. Macevicz's Bare Assertions, Of Activity During The Critical Period

Illumina does not even submit competent evidence from the inventor, Dr. Macevicz, that he used reasonable diligence during the critical period. Instead, it submits a supplemental declaration from Dr. Macevicz which contains just two paragraphs that purport to address the continuous activity required for diligence. *See* Dkt. No. 180 at ¶¶ 27, 30. These paragraphs simply rehash the same testimony from the Rule 131 affidavit—that Dr. Macevicz spent nights and weekends during the critical period working on his application. Referring to a screenshot of metadata that Illumina submitted with its Opposition, Dr. Macevicz further states that he "would have done the bulk of this work" during the critical period.[3] *Id.* ¶ 30. Tellingly, Dr. Macevicz does not state that he "did do" the bulk of this work during the critical period; rather, he provides only a speculative statement that he "would have" done so.[4] Dr. Macevicz's speculative statements, even if deemed to be

[2] Conception is not contested in this motion, even though Dr. Southern conceived of his invention over a year earlier, but under the patent rules, is only entitled to a February 9, 1995 priority date.

[3] Despite CGI's request that all information relating to conception, diligence, and reduction to practice be produced before Dr. Macevicz's August 2011 deposition, the metadata relied upon by Illumina was not given to CGI until July 31, 2012, when Illumina filed its Opposition. Accordingly, Illumina should not be allowed to rely on this metadata.

[4] It is hardly surprising Dr. Macevicz declines to offer a definite statement, given that the events in question occurred more than seventeen years ago. That Dr. Macevicz's testimony comes years after the inventive activity in question does not excuse a deficient record of evidence. *See D'Amico v. Koike*, 347 F.2d 867 (C.C.P.A. 1965) (refusing to draw an inference of diligence due to sparse record of evidence where 8 years had passed since inventive activity); *Loral Fairchild*, 931 F. Supp. at 1030-31 (refusing to draw an inference of diligence due to sparse record of evidence where more than 20 years had passed since inventive activity). Dr. Macevicz's

(continued...)

REPLY IN SUPPORT OF MSJ OF INVALIDITY                    Case No. 3:10-cv-05542 EDL

KAYE SCHOLER LLP

competent testimony, are not sufficient in any event.  What is needed, and absent, is corroborating evidence.  Beyond the speculative testimony of the inventor himself, Illumina has not proffered any evidence of specific acts at specific times which demonstrate continuous diligence during the critical period.

        (b)        The Metadata Introduced By Illumina For The First Time Fails To Corroborate Dr. Macevicz's Bare Assertions Of Diligence

Although Illumina accompanied its Opposition with a prodigious amount of paper, it mustered just a single item which it proffers as corroborating evidence—a single screenshot of metadata from the draft '597 priority application.  *See* Dkt. No. 177 at 6-8.  The case law is clear that to make out a *prima facie* case of diligence, competent evidence must corroborate any claims of diligence.  *Mahurkar*, 79 F.3d at 1577 (oral testimony is met with great skepticism).  Dr. Macevicz's speculative testimony that he "would have done the bulk of this work" during the critical period must be supported by evidence of specific acts at specific times.  *Kendall v. Searles*, 173 F.2d 986, 993 (C.C.P.A. 1949) (diligence requires that applicants must be specific as to dates and facts).  The metadata submitted by Illumina does not actually show activity during the critical period, and thus cannot support a finding of diligence.  *See In re Meyer Mfg. Corp.*, 411 F. App'x 316, 319 (Fed. Cir. 2010) ("'[W]e may surmise that appellant was probably diligent, but mere surmise cannot take the place of proof.'").

        (1)        The Metadata Is Not Specific To The Critical Period

The metadata that Illumina produced for the first time with its Opposition does not point to a single act during the critical period, aside from an undefined modification and printing of the '597 priority application on the last day of the critical period.  The metadata only establishes, at most, the following dates:  Dr. Macevicz created the application on November 6, 1994; Dr. Macevicz modified and printed the application on April 16, 1995, the day before its filing; and Dr. Macevicz accessed the application on September 15, 2000.  Dkt. No. 177 at 7.  While the metadata

---

testimony is further compromised by the fact that the proffered metadata indicates that the document was "last saved" by "Corporate Legal"—suggesting that Dr. Macevicz modified his application at work, which conflicts with his testimony that he worked on the application at home.

4

KAYE SCHOLER LLP

shows 71 revisions and a total editing time of 35 hours, there is no evidence whatsoever that this activity occurred *during* the critical period from February 8, 1995 to April 17, 1995. *See id.* Indeed, as the application was first created in November 1994, it is entirely possible that these revisions occurred between November 6, 1994 and February 7, 1995—*before* the critical period. This metadata does not provide, as required, specific evidence of diligence and therefore fails to corroborate Dr. Macevicz's testimony. For this reason alone, the Court should find that Illumina has failed to provide sufficient corroborating evidence. *See Gould v. Schawlow*, 363 F.2d 908, 916-18 (C.C.P.A. 1966) (finding no diligence where inventor's notebook did not contain dates, thus preventing the court from ascertaining whether the work was actually completed during the critical period); *Loral Fairchild*, 931 F. Supp. at 1031 (no diligence in two month critical period because, despite the "story that [the inventor] must have been [working diligently] during that brief period, the law requires more than a story; it requires relevant evidence with corroboration").

(2)    The Metadata Does Not Show Continuous Activity

Furthermore, the metadata is not sufficient evidence of diligence even if it were surmised (which it cannot be) that the metadata stems from activity occurring exclusively within the critical period. Diligence is *continuous* activity. *Mahurkar*, 79 F.3d at 1577. Illumina was required, and failed, to present evidence of *continuous* activity throughout the critical period. The metadata provides no documentation of activity on *any* particular day during the critical period, aside from the final day. The 35 hours Dr. Macevicz allegedly spent working on the application could very well have occurred from February 8, 1995 to February 14, 1995, the first seven days of the critical period. In that case, Dr. Macevicz's inactivity from February 14, 1995 to April 16, 1995, a period of two months, would bar any finding of diligence. Simply put, the metadata provides no evidence of specific activity on specific dates, let alone the required continuous activity. It does not corroborate Dr. Macevicz's testimony and is plainly insufficient to support his claim of diligence.

(c)    Dr. Macevicz Admits That He Prioritized His Free Time For Other Projects And Did Not Work Continuously On The '597 Patent Application

In addition to lacking any corroboration, Dr. Macevicz's own testimony belies his claim of diligence and, in fact, shows that he *did not* exercise reasonable diligence in bringing his invention

5

KAYE SCHOLER LLP

to constructive reduction to practice. Dr. Macevicz states that he prioritized his work on Dr. Brenner's patent portfolio over working on his own application. Dkt. No. 177 at 6. His work for Dr. Brenner was outside of his regular work responsibilities, and was undertaken of his own volition. Thus, when Dr. Macevicz had available nights and weekends to work on his own patent application, Dr. Macevicz affirmatively elected to pursue other tasks. By engaging a commercial startup company and offering his services as a patent prosecutor when he could have been working on his own application, Dr. Macevicz assumed the risk that he would file his own application later in time and leave it vulnerable to prior art.

       3.    <u>Illumina Cannot Show An Excuse For Dr. Macevicz's Inactivity</u>

As outlined in CGI's opening brief, the few acceptable excuses for lack of diligence involve the imposition of involuntary restraints on the inventor. *See* Dkt. No. 142 at 10 n.3 (citing *Texas Co. v. Globe Oil & Refining Co.*, 112 F. Supp. 455, 482 (N.D. Ill. 1953) (excusing delay caused by World War I); *Reed v. Tornqvist*, 436 F.2d 501, 504-05 (C.C.P.A. 1971) (excusing delay caused by illness and death of father); *Rey-Bellet v. Engelhardt*, 493 F.2d 1380, 1389 (C.C.P.A. 1974) (excusing delay caused by shortage of research animals and limited ability to house them)). Indeed, the Federal Circuit, in reviewing the cases on excuses for lack of diligence, characterized them as "'hardship' cases." *Griffith v. Kanamuru*, 816 F.2d 624, 627 (Fed. Cir. 1987) (rejecting inventor's excuses in the nature of commercial development). Dr. Macevicz's unremarkable contention that he maintained a busy schedule as a patent attorney does not come close to the evidence of hardship demanded by the case law.[5]

       (a)    <u>Dr. Macevicz's Commonplace Work Obligations Cannot Excuse Inactivity</u>

Courts repeatedly have rejected commonplace claims of a busy work schedule as excuses

---

[5] Illumina claims that the short period of time that Dr. Macevicz was not reasonably diligent somehow distinguishes this case from those where diligence was not found over longer periods of time. Dkt. No. 177 at 10. This is not what the case law teaches; indeed, even short lapses in time can be fatal. *See In re Mulder*, 716 F.2d 1542, 1545 (Fed. Cir. 1983) (finding no evidence accounting for *two* days in the critical period, stating "liberality cannot be extended to the point of eliminating all proof of diligence, no matter how short the period to be covered. Appellants' difficulty, as they have had to admit, is that there is no evidence whatever of record showing diligence, and therefore they cannot comply with the rule.").

KAYE SCHOLER LLP

1    for lack of diligence. *See, e.g.*, *Feinberg v. Cowan*, 29 App.D.C. 80, 1907 WL 19764, at *1 (1907)

2    (finding no excuse despite inventor's claim that he was "so busy earning my living, in soliciting,

3    hunting up business, taking orders, that [he] did not have time to attend to the matter in that

4    period"); *Gallagher v. Hien*, 25 App.D.C. 77, 1905 WL 17692, at *2 (1905) (finding no excuse

5    despite inventor's claim that "he was a very busy man, engaged not only in his regular

6    employment, but was developing or assisting in the development of another line of invention");

7    *Robinson v. Copeland*, 24 App.D.C. 68, 1904 WL 19049, at *5 (1904) (finding no excuse where

8    "[h]e also claims to have been, and no doubt he was, a very busy man in other directions; but it is

9    well-settled law that this is no sufficient excuse for inactivity which allows the intervention of

10   others in the field of invention and the perfection of their enterprises").

11           Accordingly, the case law requires circumstances beyond a busy work schedule to find a

12   valid excuse for lack of diligence. Indeed, the single case Illumina cites for the contention that Dr.

13   Macevicz's work schedule excuses his inactivity presented significantly more constraints on the

14   inventor than simply a busy schedule. In *Courson v. O'Connor*, 227 F. 890, 894 (1915), the

15   inventor in 1908 hired patent attorneys fifteen miles away in Pittsburg and struggled to find the

16   time to travel to meet them. The inventor was "the head of a large and important [railroad] shop"

17   and supervised 3,000 men. *Id.* Having to travel fifteen miles in 1908-1909 each time he needed to

18   meet with his attorneys worked a serious hardship on the inventor. Such a hardship is not present

19   in the instant case. Dr. Macevicz *was* the attorney drafting his patent, and by his own admission,

20   worked on his application at his home. Dkt. No. 180 at ¶ 27. He faced no similar obstacles in

21   completing his application.

22           (b)     Dr. Macevicz's Choice To Work On The Brenner Applications In His Free
                     Time Cannot Excuse Inactivity

23

24           To the extent Illumina argues that Dr. Macevicz's work for Dr. Brenner should constitute

25   an excuse for his lack of diligence, this argument fails. Voluntarily setting aside an invention while

26   in pursuit of other projects is not an excuse for diligence. *See Morway v. Bondi*, 97 U.S.P.Q. 318,

27   323 (C.C.P.A. 1953) (finding no excuse for two one and a half month periods of inactivity where

28   inventors claimed that they were managing many other duties and projects).

REPLY IN SUPPORT OF MSJ OF INVALIDITY                    Case No. 3:10-cv-05542 EDL

KAYE SCHOLER LLP

KAYE SCHOLER LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As Dr. Macevicz readily admits, his "work on Dr. Brenner's patent portfolio was separate from [his] work for AB and Lynx." Dkt. No. 180 at ¶ 19. He took on this side project for Dr. Brenner out of his own volition, not as an outgrowth of his full-time job at AB or agreement with Lynx. *Id.* Putting aside work on his own patent applications to pursue this optional work does not constitute an excuse. In *Griffith v. Kanamuru*, 816 F.2d 624, 626-29 (Fed. Cir. 1987), the inventor admitted that he often interrupted and put aside his work on the invention to turn to other experiments at the request of his department. *Id.* at 628-29. The court found that the invention was "second and often third priority in laboratory research," and thus the inventor could not establish diligence or a legally sufficient excuse for inactivity. *Id.* at 629. Like the inventor in *Griffith*, Dr. Macevicz set aside his work on the '597 priority application to file patents for Dr. Brenner during the critical period. *See* Dkt. No. 180 at ¶¶ 20-25. Although he claims (without citation to evidence) that he "was obligated to give priority to my work on Dr. Brenner's patent portfolio," the court in *Griffith* rejected the inventor's similar claim that he prioritized the request of the department chairman to work on other experiments over his own invention. *See Griffith*, 816 F.2d at 628-29. For these reasons, Dr. Macevicz's work for Dr. Brenner does not constitute a valid excuse for his inactivity during the critical period.

There are no facts in dispute, and CGI respectfully asks the Court to find that Dr. Macevicz was not reasonably diligent under the law, nor was the lack of reasonable diligence excused.

B.     The Factual Disclosures Of The Prior Art Leave No Room For Genuine Dispute

Because Illumina cannot satisfy the reasonable diligence requirement, it cannot swear behind Southern. As a result, no further inquiry is needed to invalidate claims 9, 10, 17, 18, and 19 of the '597 patent (along with the already invalidated claim 1), as Illumina does not contest that these claims are anticipated by Southern. Illumina only contests CGI's showing that claims 14 and 15 are invalid in light of Southern. Dkt. No. 177 at 13-16. With respect to the other asserted prior art—the Brenner, Whiteley, and Martinelli references—Illumina seeks to avoid summary judgment of invalidity by concocting immaterial questions of fact that ignore the Court's claim constructions. Indeed, nothing indicates that Dr. Backman, Illumina's expert, even

8

considered the Court's claim construction order before rendering his opinion, much less applied those constructions.  Dkt. No. 178 at ¶ 15.  Dr. Backman's opinions are contrary to the Court's claim constructions, and should not be viewed as disputed material facts.  *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995) ("[c]laim interpretation, as a question of pure law, is amenable to summary judgment and disagreement over the meaning of a term within a claim does not necessarily create a genuine issue of material fact.").

### 1.   The Court's Claim Constructions Place The Claims Squarely In The Prior Art

When, as here, a patentee seeks broad claim constructions, the patentee necessarily accepts the risk that those broadened claims will fall within the prior art.  *See Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C03-01431SBA, 2005 WL 2043047, at *2 (N.D. Cal. Aug. 24, 2005) (recognizing the "truism that patentees who seek broad claim constructions to argue for infringement may see their claims invalidated in view of the prior art.").  Illumina cannot now avoid the consequences of seeking broad claim constructions.[6]

The Court has construed "repeating [steps (a) and (b)] until [the] sequence of nucleotides is determined."  Dkt. No. 122 at 26-27.  Based on the Court's constructions, there are four types of repeating which the claims of the '597 patent now cover:  (1) successive ligation; (2) repeating with different sequence initializing oligonucleotides; (3) repeating with same sequence initializing oligonucleotides; and (4) conditional repeating in which there is no need to repeat if the sequence of a polynucleotide is fully determined in the first cycle.  *Id.*  Illumina argued for and was granted these constructions, though it appears that Dr. Backman did not consider or apply them prior to

---

[6] Illumina retreats to the argument that the review of these references in reexamination weighs against a finding of invalidity.  But the Court owes no deference to the PTO's findings and must conduct its own examination of invalidity.  *See Quad Envt'l Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 876 (Fed. Cir. 1991) ("The courts are the final arbiter of patent validity and, although courts may take cognizance of, and benefit from, the proceedings before the patent examiner, the question is ultimately for the courts to decide, without deference to the rulings of the patent examiner"); *Jacobs Vehicle Equip. Co. v. Pacific Diesel Brake Co.*, 829 F. Supp. 2d 11, 37 (D. Conn. 2011) (finding claims invalid for obviousness even though claims had survived reexamination over the same prior art).  This is particularly true because the PTO did not have the benefit of this Court's claim construction order.  Moreover, it is noteworthy that Illumina has, on multiple occasions, misled the PTO regarding this very same prior art, further undermining any value Illumina places on the PTO's findings.  *See* Dkt. No. 142 at 5-8.

REPLY IN SUPPORT OF MSJ OF INVALIDITY          Case No. 3:10-cv-05542 EDL

KAYE SCHOLER LLP

rendering his opinion.  Dkt. No. 178 at ¶ 15.

2.    Illumina Concedes That Southern Invalidates Claims 1, 9, 10, And 17-19

Because Illumina does not contest that Southern anticipates claims 9, 10, and 17-19, the Court should find those claims invalid.[7]  Dkt. No. 177 at 13-16.  In fact, Illumina has previously stipulated, and the Federal Circuit has affirmed, that claim 1 of the '597 patent is invalid over Southern.  Dkt. No. 142 at 7.  Illumina only defends claims 14 and 15.  Dkt. No. 177 at 13-16.

Illumina's argument that Southern does not render claims 14 and 15 invalid rests entirely on Dr. Backman's opinion that Southern "teaches away" from using fluorescent labels.  Dkt. No. 178 at ¶¶ 29-30 and 34 (stating "fluoresce *cannot* be used to obtain sequence reads using Southern's method" and would be "inoperable if fluoresce was substituted for its mass tags" because the fluorescent tag is a single reporter tag) (original emphasis).

Dr. Backman's opinion does not create an issue of fact.  There can be no factual dispute that Southern teaches the use of a single tag, as the plain language of the abstract shows:

> A reagent comprises: a) an analyte moiety comprising at least two analyte residues, and linked to; b) **a tag moiety comprising one or more reporter groups** adapted for detection by mass spectrometry, wherein a reporter group designates an analyte residue, and the reporter group at each position of the tag moiety is chosen to designate an analyte residue at a defined position of the analyte moiety.

Dkt. No. 144-3 (Southern prior art, abstract) (emphasis added).  As is plain from the abstract, a single tag could be used with the Southern method to determine the "analyte residue." *Id.*  There

---

[7] Illumina does not address *any* of the facts put forward which demonstrates that Southern anticipates claim 1 by teaching "[a] method for indentifying a sequence of nucleotide in a poly nucleotide" (the "Preamble element"), "(a) extending an initializing oligonucleotide…by ligating…to form an extended duplex" (the "Step (a) element"); "(b) identifying one or more nucleotides…" (the "Step (b) element"); and "(c) repeating steps (a) and (b)…" (the "Repeating element").  Dkt. No. 142 at 12-13.  CGI also presented factual evidence that dependent claim 9 was anticipated because the additional elements of "binding region and target polynucleotide" were present in the art *Id.* at 14.  In addition, that dependent claim 10 was anticipated because Southern taught "a known sequence and target polynucleotide [which] comprises an unknown sequence….[and an] initializing oligonucleotide…." *Id.*  Southern anticipated dependent claims 17 (requiring a plurality of different probes), 18 (requiring the probe to have a label associated with a particular base) and 19 (wherein the probes are 8, 9, or 12 nucleotides long.) *Id.* 15-16.  Illumina did not address any of these facts.  The Court may deem these facts undisputed, and given the supporting materials such as Dr. Metzker's expert opinion, grant summary judgment of invalidity as to these claims in light of Southern.

10

KAYE SCHOLER LLP

is no genuine dispute over the factual disclosures of Southern.  Illumina's only argument is that Southern does not teach the use of a single tag to detect a single base.  *See* Dkt. No. 177 at 16 (arguing that "use of a fluorescent label that is only capable of identifying one base at a time....").  But a simple reading of the Southern abstract itself leaves no room for debate—Southern plainly teaches the use of a single tag.  *See* Dkt. No. 144-3.  No reasonable juror could find otherwise.

Furthermore, it is undisputed that Brenner teaches the use of fluorescent tags.  Dkt. No. 177 at 15-16.  Illumina merely urges that Southern would be inoperable if a fluorescent tag was used because use of a single fluorescent tag is only "capable of identifying one base at a time."  *Id*. at 17.  Yet Southern, as noted above, clearly envisions the use of a single tag.  *See* Dkt. No. 144-3; Dkt. No. 147 at ¶¶ 46-47.  There is no genuine dispute over these disclosures:  Brenner discloses the limitation that the tag be one of fluoresce, and Southern teaches a single tag can be used.  *See infra*.  Southern by itself is anticipating, and in any event the combination of Southern and Brenner renders claims 14 and 15 obvious.  No reasonable juror could find otherwise.

      3.     <u>Illumina Does Not Contest The Inventor's View That If The '597 Patent Claims Were Not Limited To Successive Ligation, Then Whiteley Invalidates</u>

In view of the broad scope of the claims as construed, the claims of '597 patent (including claim 1) now fall within prior art such as Whiteley and Martinelli.  Dr. Macevicz, the inventor of the '597 patent, opined that Whiteley would render the claims of the '597 patent invalid if they were not restricted to "successive ligation"—just one of the four types of "repeating" under the Court's construction.  Dkt. No. 142  at 2.  Under the Court's claim construction, the claims of the '597 patent are not limited to successive ligation, but rather encompass other types of repeating.  *See*  Dkt. No. 122 at 26-27.  Illumina has never stated that Dr. Macevicz's opinion was incorrect.

There is no genuine dispute that the factual disclosures of Whiteley teach a complementary "probe" binding to a target sequence—thereby determining the sequence of the target in a single step.  Dkt. No. 142 at 17.  In fact, Whiteley does in one step what the '597 patent must do in multiple steps.  The PTO allowed the claims of the '597 patent over Whiteley because it believed that there was no "repeating" step disclosed in Whiteley.  Dkt. No. 177 at 21 (citing a non-final office action).  There is no dispute that the factual disclosures from Whiteley teach the full

11

determination of a sequence in a single cycle (the "conditional repeating" above). *Id*. at 19. In fact, Whiteley discloses multiple forms of "repeating" as construed by the Court. *See* Dkt. No. 142 at 17-18 (CGI explaining two forms of repeating that Whiteley teaches). Beyond the "conditional repeating" mentioned, Whiteley teaches the "same sequence initializing oligonucleotide repetition" as construed by the Court. *Id*.; *see also* Dkt. No. 147 at ¶ 59 (explaining that Whiteley teaches extending "along the identical polynucleotide sequence as was acted upon in the first cycle...."). Tellingly, Illumina does not contest that Whiteley anticipates claims 9, 14, 15, and 17-19.[8]  *Id*.

As to claim 10, Illumina argues that Whiteley does not teach the determination of the sequence of a target polynucleotide because only a single base pair is being determined. *See* Dkt. No. 177 at 23. But this argument does not address the undisputed fact that Whiteley discloses the use of a "diagnostic probe" which is complementary to an unknown sequence, and a "contiguous probe" which binds to known sequence. *See* Dkt. No. 142 at 18. When the experiment is run, the identity of the target sequence is unknown. This fact is not disputed. *See* Dkt. No. 177 at 23. The results of the experiment, if a successful ligation occurs, determine the full sequence of the unknown target. This also is not in dispute. *Id*. This experiment can be done using "conditional repeating" (*i.e.* no repeating) and yields the entire sequence identity, which prior to the experiment, was unknown. Otherwise, there would be no reason to run the experiment. No reasonable juror could find otherwise: Whiteley teaches the determination of a target sequence as required by claim 10 of the '597 patent.

       (a)       <u>Illumina's Last Ditch Effort To Claim Assignor Estoppel Will Not Help</u>

Assignor estoppel is an equitable doctrine concerned with the "balance of the equities

---

[8] CGI presented factual evidence that Whiteley anticipated claims 1, 9, 10, 14, 15, and 17-19. *Id*. at 16. Illumina only addresses the Preamble element and the Repeating element in clam 1. Dkt. No. 177 at 21. As such, that Whiteley teaches the Step (a) element and Step (b) element is not disputed. Illumina does not contest that Whiteley teaches "binding region" of dependent claim 9; "fluorescent label" of dependent claim 14; "fluorescent label tied to a particular nucleotide" of dependent claim 15; "plurality of different probes" of dependent claim 17; "probe to have a label associated with a particular base" of dependent claim 18; or "probes are 8, 9, or 12 nucleotides long" of dependent claim 19. *See* Dkt. No. 177 at 21-23. The Court may deem these facts undisputed, and given the supporting materials such as Dr. Metzker's expert opinion, grant summary judgment of invalidity as to these claims in light of Whiteley.

REPLY IN SUPPORT OF MSJ OF INVALIDITY         Case No. 3:10-cv-05542 EDL

between the parties" and committed to the discretion of the trial court. *Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224-25 (Fed. Cir. 1988). When an inventor assigns an invention for value, assignor estoppel prevents the inventor, and those *in privity* with the inventor at the time validity is challenged, from contesting the validity of a patent that issues on the invention. *QG Prods., Inc. v. Shorty, Inc.*, 992 F.2d 1211, 1212-14 (Fed. Cir. 1993). Privity is a clear requirement of assignor estoppel. *Id.* Illumina cites *Pandrol* for the contention that CGI cannot rely on Dr. Macevicz's opinion that Whiteley would invalidate the claims of the '597 patent. Dkt. 177 at 19-20. But in *Pandrol*, the inventor was, at the time of the lawsuit, an employee of, and thus in privity with, the accused infringer. *See Pandrol USA LP v. Airboss Ry Prods., Inc.*, No. 99-182, 2003 WL 24272366, at *4 (W.D. Mo. Oct. 15, 2003). Dr. Macevicz, however, is not employed by CGI, and the parties otherwise have no relationship that would constitute privity. By contrast, in *Shamrock Technologies, Inc. v. Medical Sterilization, Inc.*, 903 F.2d 789, 793-95 (Fed. Cir. 1990), the court applied assignor estoppel where the inventor (1) joined the accused infringer company, (2) owned 50,000 shares of its stock, (3) oversaw the design and construction of facilities for manufacturing the accused products, and (4) joined the company in part to start up the infringing operations. CGI does not have any relationship with Dr. Macevicz that would permit a finding of privity.

4.    <u>Illumina Makes The Same Arguments Regarding The Martinelli Prior Art As It Did Regarding The Whiteley Prior Art</u>

Illumina makes the same arguments relating to Martinelli as it did for Whiteley. Dkt. No. 177 at 24-28. And once again, Illumina does not contest that the cited prior art anticipates most of the claims CGI placed at issue.[9] Martinelli teaches different types of repeating: "conditional repeating," "re-registration option," and "same sequence initializing oligonucleotide" repeating. *See* Dkt. No. 142 at 20-21. Illumina, however, states that Martinelli did not disclose "repeating [steps (a) and (b)] until [the] sequence of nucleotides is determined." Dkt. No. 177 at 24.

---

[9] CGI proffered factual evidence that claims 1, 9, 10, 14, 15, 17, 18, and 19 were anticipated by this prior art. Dkt. No. 142 at 17-19. The very same arguments were made by Illumina as were made for Whiteley. Dkt. No. 177 at 24. The Court may deem these same facts as undisputed to Martinelli, and given the supporting materials such as Dr. Metzker's expert opinion, grant summary judgment of invalidity as to these claims in light of Martinelli.

REPLY IN SUPPORT OF MSJ OF INVALIDITY                    Case No. 3:10-cv-05542 EDL

KAYE SCHOLER LLP

1    However, the claims as construed allow for a conditional repeating if the final sequence

2    information in a portion of a polynucleotide can be determined in one step. *See* Dkt. No. 147 at ¶

3    101.  There is no genuine dispute over the factual disclosure that Martinelli teaches determining

4    the target sequence in the first cycle. Dkt. No. 177 at 25.  In response to the "re-registration"

5    teachings of Martinelli, Illumina cites to the PTO and an "express disavowal" of the "repeating

6    disclosed in Martinelli." *Id.* at 26.  But Illumina conspicuously fails to address the detailed

7    explanation found in Dr. Metzker's declaration. *See* Dkt. No. 147 at ¶ 98.  Illumina's only

8    response is attorney argument, and not expert opinion. *See* Dkt. No. 177 at 26.  As such, there is

9    no "battle of the experts" in regard to "the re-registration option."  Finally, Illumina argues that

10   Dr. Metzker must have been confused regarding the "same sequence initializing oligonucleotide"

11   repeating option. *Id.* at 27.  Dr. Backman notes that "conducting the same experiment over and

12   over by varying the four bases" was not an example of "repeating." Dkt. No. 178 at ¶ 61.

13   However, this is *exactly* one type of repeating covered by the claims. *See* Dkt. No. 147 at ¶¶ 99-

14   100 (graphically demonstrating how a "same sequenced" initializing oligonucleotide is taught by

15   Martinelli).  Illumina's expert merely declares that even if Example 6 of Martinelli is an example

16   of nucleotide identification, it is not covered by the claims. *See* Dkt. No. 178 at ¶ 62.  This is

17   plainly not enough to create a material factual dispute.

18       In regard to claim 10, Dr. Metzker opines that Martinelli teaches the hybridization of a

19   first probe to a known binding region, followed by the hybridization of a second probe to a target

20   sequence. *See* Dkt. No. 147 at ¶ 103.  The Court adopted Illumina's construction of "target

21   polynucleotide" to mean "a polynucleotide having a portion to be sequenced." Dkt. No. 122 at

22   51.  No reasonable juror could find that the factual disclosures of Martinelli do not teach a portion

23   of a target nucleotide to be sequenced.  Illumina merely argues that the target sequence in

24   Martinelli is not *unknown enough* because only one base pair is unknown. *See* Dkt. No. 178 at

25   19. Such an argument is nonsensical, because the sequence *is* unknown when a base pair is

26   unknown.  No reasonable juror could find that claim 10 of the '597 patent was not invalid in light

27

28

REPLY IN SUPPORT OF MSJ OF INVALIDITY                Case No. 3:10-cv-05542 EDL

of Martinelli solely because the target sequence was not *unknown enough*.  All of the elements of claim 10 are met by Martinelli, and the Court should find the claim anticipated.

Neither Illumina nor Dr. Backman address the argument that one skilled in the art would have found the claims of the '597 patent obvious in light of Martinelli.  Dkt. No. 147 at ¶ 109.  Accordingly, Illumina has conceded the point and the Court should further find that Martinelli renders obvious claim 10 of the '597 patent.

5.  Dr. Macevicz Admits That He Copied The Brenner Prior Art And That The Alleged Invention Of The '597 Patent Was An "Outgrowth" Of That Copied Prior Art

There is no dispute that Dr. Macevicz copied large portions Brenner, and that Dr. Macevicz admitted that his alleged invention was based upon "an outgrowth[] of ideas he had" based on Dr. Brenner's applications.  Dkt. No. 177 at 28.  Illumina only argues that Brenner does not render claims 1, 9, and 10 obvious, thereby conceding that Brenner invalidates claims 14, 15, 16, 17, and 18.  *See id.*; Dkt. No. 178 at ¶¶ 67-72.

Dr. Metzker devotes a full 16 paragraphs to demonstrating that one of ordinary skill in the art would have found the claims of the '597 patent obvious in light of Brenner.  Dkt. No. 147 at ¶¶ 70-86.  Dr. Backman merely offers a conclusory opinion that one of ordinary skill in the art would not have read Brenner and thought to modify it. Dkt. No. 178 at ¶ 68-70.  Conclusory statements by experts are insufficient to generate material issues of fact.  *See Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001) ("[b]road conclusory statements offered by . . . experts are not evidence and are not sufficient to establish a genuine issue of material fact."); *see also Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1112 (Fed. Cir. 2000).  Illumina has not proffered expert opinion which creates material facts in dispute, and no reasonable juror would find otherwise.

III.  **CONCLUSION**

For these reasons, CGI respectfully requests that the Court grant summary judgment of invalidity as to claims 1, 9, 10, and 14-19 of the '597 patent.  In the alternative, because Illumina has failed to address many of the claims and/or elements CGI contends are present in the prior art, CGI respectfully asks that the Court grant partial summary judgment as to those claims.

REPLY IN SUPPORT OF MSJ OF INVALIDITY                    Case No. 3:10-cv-05542 EDL

KAYE SCHOLER LLP

KAYE SCHOLER LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  August 7, 2012

Respectfully submitted,

KAYE SCHOLER LLP


By:   /s/ Michael J. Malecek
     Michael J. Malecek
Attorneys for Defendant and Counterclaimant
COMPLETE GENOMICS, INC.

16