KEVIN M. FLOWERS (admitted *pro hac vice*)
MARK H. IZRAELEWICZ (admitted *pro hac vice*)
JOHN R. LABBE (admitted *pro hac vice*)
CULLEN N. PENDLETON (admitted *pro hac vice*)
AMANDA K. ANTONS (admitted *pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, Illinois 60606-6357
(312) 474-6300 (telephone)
(312) 474-0448 (facsimile)
E-Mail: kflowers@marshallip.com
E-Mail: mizraelewicz@marshallip.com
E-Mail: jlabbe@marshallip.com
E-Mail: cpendleton@marshallip.com
E-Mail: aantons@marshallip.com

GINA A. BIBBY
FOLEY & LARDNER LLP
975 Page Mill Road
Palo Alto, CA 94304
(650) 856-3700 (telephone)
(650) 856-3710 (facsimile)
E-Mail: gbibby@foley.com

Attorneys for Plaintiffs
ILLUMINA, INC. and SOLEXA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILLUMINA, INC. and SOLEXA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> COMPLETE GENOMICS, INC., <br><br> Defendant. | Case No. 3:10-cv-05542 EDL <br><br> **ILLUMINA'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING CLAIMS 14 AND 15** |

# TABLE OF CONTENTS

I. Introduction ................................................................................................................. 1

II. Argument .................................................................................................................... 3

    A. The Court misapplied the law on "inoperability," erroneously excluded Dr. Backman's opinions, and resolved genuine issues of disputed material fact against Illumina regarding the combination of Southern with Brenner ........................................................................................ 3

        1. The Court misapplied the law regarding "inoperability" and resolved factual issues against Illumina ............................................... 3

        2. The Court erred in excluding Dr. Backman's opinions regarding inoperability, which raise genuine issues of disputed material fact ................................................................................................................ 5

        3. Southern did not disclose the use of fluorescent labels as an embodiment of his method ................................................................... 7

        4. Neither CGI nor the Court cited evidence supporting a reason to combine Southern and Brenner, which is a disputed factual issue ............................................................................................................. 9

    B. Factual disputes regarding Whiteley preclude summary judgment ......... 11

        1. Whiteley did not disclose "repeating" because it did not disclose "repeating" the ligation step .............................................................. 11

        2. Whiteley does not teach "repeating" "until the *sequence of nucleotides* is determined" because Whiteley did not determine a "sequence" ........................................................................................... 13

III. Conclusion ............................................................................................................... 16

# TABLE OF AUTHORITIES

**CASES**

*Chimie v. PPG Indus., Inc.*,
    402 F.3d 1371 (Fed. Cir. 2005) ................................................................................ 14

*In re Billingsley*,
    279 F.2d 689 (C.C.P.A. 1960) ................................................................................... 5

*In re Fritch*,
    972 F.2d 1260 (Fed. Cir. 1992) ................................................................................ 10

*In re Gordon*,
    733 F.2d 900 (Fed. Cir. 1984) .................................................................................... 4

*In re ICON Health & Fitness, Inc.*,
    496 F.3d 1374 (Fed. Cir. 2007) .............................................................................. 4, 5

*In re Keller*,
    642 F.2d 413 (C.C.P.A. 1981) .................................................................................... 5

*In re Ratti*,
    270 F.2d 810 (C.C.P.A. 1959) .................................................................................... 4

*In re Wood*,
    599 F.2d 1032 (C.C.P.A. 1979) .................................................................................. 5

*Innogenetics, N.V. v. Abbott Labs.*,
    512 F.3d 1363 (Fed. Cir. 2008) ................................................................................ 10

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
    688 F.3d 1342 (Fed. Cir. 2012) ............................................... 3, 5, 6, 7, 8, 9, 10

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007) ........................................................................................ 5, 7, 9

*McGinley v. Franklin Sports, Inc.*,
    262 F.3d 1339 (Fed. Cir. 2001) .................................................................................. 9

*Mycogen Plant Sci. v. Monsanto Co.*,
    243 F.3d 1316 (Fed. Cir. 2001) ................................................................................ 15

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................................ 15

*Power-One, Inc. v. Artesyn Techs., Inc.*,
    599 F.3d 1343 (Fed. Cir. 2010) .................................................................................. 5

*Spectralytics, Inc. v. Cordis Corp.*,
    649 F.3d 1336 (Fed. Cir. 2011) .................................................................................. 6

*Tec Air, Inc. v. Denso Mfg. Mich., Inc.*,
    192 F.3d 1353 (Fed. Cir. 1999) .............................................................................. 4, 6

## I. Introduction

Under Local Rule 7-9, Illumina seeks leave of Court to file a motion for reconsideration of the Court's October 16, 2012 ruling that claims 14 and 15 of the '597 patent are invalid (Docket No. 197). Under Local Rule 7-9(b)(3), Illumina respectfully submits that the Court's rulings represent a manifest failure to consider material facts and dispositive legal arguments and should be reconsidered and withdrawn.[1]

In its Motion for Summary Judgment of Invalidity, CGI did not even argue that claims 14 and 15 were rendered obvious by Southern combined with Brenner, and did not rely on the caselaw regarding obviousness on which the Court relied in reaching its decision. Thus, Illumina never had reason or opportunity to fully brief this issue.

Illumina respectfully submits that the Court misinterpreted and thus misapplied the caselaw regarding "inoperability." Although the Court cited cases saying that the inability to "bodily incorporate" a structure from one prior-art reference into the structure of another reference does not wholly preclude combining those references in an obviousness analysis, those cases do not hold that "inoperability" is irrelevant.

Instead, as the Federal Circuit has explained in other cases, if combining references would render the primary reference "inoperable for its intended purpose," or change the "principle of operation" of the reference, that ***precludes*** a finding of obviousness. Because the Court did not appear to consider this doctrine, the Court discounted the opinions of Illumina's expert, Dr. Backman, which at a minimum raise genuine issues of disputed material fact regarding inoperability and obviousness.

In addition, Illumina respectfully submits that the Court misunderstood the teachings of the Southern reference. The Court stated that Southern taught

---

[1] Although this Motion is limited to certain aspects of the Court's ruling regarding claims 14 and 15, Illumina respectfully disagrees with other aspects of the Court's ruling and reserves its right to raise additional issues on appeal.

x
x

fluorescent labels as a "non-preferred" embodiment. That is incorrect. Southern did not disclose fluorescent labels as any type of embodiment—non-preferred or preferred. While Southern discussed the drawbacks of using fluorescent labels in other prior-art methods, nowhere does Southern suggest that fluorescent labels could or should be used in Southern's claimed "mass tag" invention. In fact, using fluorescent labels in Southern's method would have rendered Southern's invention inoperable for its intended purpose and changed its principle of operation.

Thus, Illumina respectfully submits that the Court should reconsider and withdraw its decision finding claims 14 and 15 obvious over Southern and Brenner because that decision necessarily resolved genuine issues of disputed material fact (*e.g.*, inoperability) against Illumina regarding (i) the scope and content of the prior art; and (ii) whether one of ordinary skill in the art would have been motivated to combine the method disclosed in Southern with the fluorescent labels disclosed in Brenner.

Similarly, the Court resolved genuine issues of disputed material fact, and apparently did not consider relevant questions of law (*e.g.*, claim construction), in concluding that Whiteley anticipates '597 claim 1.

First, Whiteley did not disclose the "same-sequence initializing oligonucleotide" form of "repeating" because only *one* of the two probes used in Whiteley's two cycles can possibly match the target sequence and be ligated to the "initializing" oligonucleotide. Thus, Whiteley cannot have satisfied the "repeating" limitation regarding ligation.

Second, Whiteley's method only identifies a *single* nucleotide, not a "sequence" of nucleotides. Illumina submitted expert testimony explaining that the single nucleotide detection taught in Whiteley does not identify a *sequence* of nucleotides. Moreover, during prosecution, Illumina distinguished the very method of single-nucleotide detection ("OLA") taught in Whiteley, so Whiteley cannot satisfy claim 1.

Thus, Illumina respectfully submits that the Court should reconsider and withdraw its decision regarding Whiteley because that decision necessarily resolved factual and legal issues against Illumina regarding whether Whiteley disclosed "repeating" and the identification of a "sequence."

## II. Argument

### A. The Court misapplied the law on "inoperability," erroneously excluded Dr. Backman's opinions, and resolved genuine issues of disputed material fact against Illumina regarding the combination of Southern with Brenner

Although the Court found Southern insufficient "at the summary judgment stage to completely anticipate claims 14 and 15," the Court found claims 14 and 15 rendered obvious by the combination of Southern with Brenner (Order at 31:6–7, 36).

Significantly, CGI *never* raised this combination in its motion for summary judgment; indeed, CGI only cursorily mentioned it in passing in its reply brief.

Although obviousness is a question of law, it is based on underlying factual questions: "A party seeking to invalidate a patent on the basis of obviousness must 'demonstrate 'by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention . . . .'" *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012) (quoting *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009)) (reversing district court's grant of JMOL of obviousness).

Here, CGI never even discussed these factual issues in its motion papers. CGI presented ***no*** evidence, much less ***clear-and-convincing*** evidence, to explain why one of ordinary skill would have had any reason to combine Southern's mass spectrometry-based method with Brenner's fluorescent labels.

#### 1. The Court misapplied the law regarding "inoperability" and resolved factual issues against Illumina

The Court stated that obviousness does not require that one be able to "bodily incorporate" the features of one prior-art reference into another. (Order at 32:8.) However, the Federal Circuit has held that this is only *part* of the obviousness

question: the Federal Circuit has also held that combining references must not render the primary reference "inoperable for its intended purpose." *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1360 (Fed. Cir. 1999) (affirming jury verdict where jury implicitly found that combination of prior-art references would have rendered prior art "inoperable for its intended purpose"); *see also In re Gordon*, 733 F.2d 900, 902 (Fed. Cir. 1984) (citing inoperability as a relevant fact in concluding that there was no evidence of "motivation to one of ordinary skill in the art to employ [a prior-art] apparatus in an upside down orientation").

As explained in the Patent Office's Manual of Patent Examining Procedure,

> "The test for obviousness is not whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference. . . . Rather, the test is what the combined teachings of those references would have suggested to those of ordinary skill in the art." *In re Keller*, 642 F.2d 413, 425 (C.C.P.A. 1981). . . .
>
> ***However, the claimed combination cannot change the principle of operation of the primary reference or render the reference inoperable for its intended purpose.***

M.P.E.P. § 2145 (Exh. F at 2100-172)[2] (emphasis added); *see also In re Ratti*, 270 F.2d 810, 813 (C.C.P.A. 1959) (reversing obviousness rejection where "suggested combination of references would require a substantial reconstruction and redesign of the elements shown in [the primary reference] as well as a change in the basic principles under which the [reference's] construction was designed to operate").

The cases the Court cited did not hold that inoperability is irrelevant to the obviousness inquiry. For example, in *In re ICON Health & Fitness*, the Federal Circuit acknowledged "the principle that a reference teaches away from a combination when using it in that combination would produce an inoperative result." *In re ICON Health & Fitness, Inc.*, 496 F.3d 1374, 1382 (Fed. Cir. 2007). In that case, the court ultimately concluded that one of ordinary skill in the art would know to

---

[2] All exhibits cited in this motion are attached to the Declaration of John R. Labbé filed contemporaneously with this motion.

**ILLUMINA'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**
**CASE NO. 3:10-CV-05542 EDL**

4

"size the components" (a spring) correctly for their intended purpose. *Id.* But there is *no* evidence here showing that incorporating fluorescent labels into Southern's spectrometry-based method is in any way analogous to tweaking the strength of a spring.

The remaining three cases the Court cited regarding "bodily incorporation" do *not* say that "inoperability" is *irrelevant* to the obviousness inquiry.[3] As the Court noted, the critical question raised in each of these cases is "what the combined teachings of the references would have suggested to those of ordinary skill in the art." (Order at 33:13–15; 33:26–27.) Answering this question requires factual findings regarding the scope and content of the prior art, and whether one of ordinary skill in the art would have had a reason to combine the references. *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012); *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1351 (Fed. Cir. 2010).

Moreover, the "bodily incorporation" cases the Court cited are either appeals to or from the Board of Patent Appeals and Interferences, and were therefore decided under a different standard of review than is applicable here: in an appeal to the Board, the examiners in the Patent and Trademark Office (rather than a jury, as in this Court) are the finders of fact, and their findings of fact are accepted so long as there is any evidence to support them; the clear-and-convincing burden of proof does not apply. In contrast, summary judgment of obviousness in a district court is only appropriate when the factual issues underlying the obviousness inquiry are not in "material dispute." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426–27 (2007).

### 2. The Court erred in excluding Dr. Backman's opinions regarding inoperability, which raise genuine issues of disputed material fact

The Court discounted Dr. Backman's opinion, explaining that the "disputes raised by Illumina's expert about teaching away and inoperability are issues of law,

---

[3] *See In re Keller*, 642 F.2d 413 (C.C.P.A. 1981); *In re Wood*, 599 F.2d 1032 (C.C.P.A. 1979); *In re Billingsley*, 279 F.2d 689 (C.C.P.A. 1960) (cited in Order at 32–36).

**ILLUMINA'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**
**CASE NO. 3:10-CV-05542 EDL**

5

1  rather than disputes of fact." (Order at 36:6–7.)[4] We respectfully submit that the
2  Court misapplied the law. The issue of inoperability, which goes to the question of
3  whether there was a reason to combine, is an issue of fact, not law. *Tec Air, Inc. v.*
4  *Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1360 (Fed. Cir. 1999) (affirming jury verdict
5  where jury implicitly found that combination of prior-art references would have
6  rendered prior art "inoperable for its intended purpose"); *see also Kinetic Concepts*,
7  688 F.3d at 1367 ("Significantly, whether there is a reason to combine prior art
8  references is a question of fact."); *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336,
9  1343 (Fed. Cir. 2011) ("Whether the prior art teaches away from the claimed
10 invention is a question of fact . . . .").

11 There is no evidence here that one of ordinary skill at the time of the invention
12 would have had a reason or would have been motivated to combine Southern's mass-
13 spectrometry-based method with Brenner's fluorescent labels; the *only* evidence in
14 the record regarding this issue is Dr. Backman's opinion that one of ordinary skill
15 would *not* have been motivated to combine Southern's method with Brenner's
16 fluorescent labels, because they would have known that doing so would have rendered
17 Southern's method inoperable. (Exh. D, Backman Decl. ¶¶ 32–34.)[5]

18 As Dr. Backman explains, the use of fluorescent labels would have rendered
19 Southern's method inoperable because they are incompatible with mass spectrometry.
20 The use of fluorescent labels would have changed the whole principle of operation of
21 Southern because Southern teaches a method for identifying up to six bases in a
22 single cycle using mass tags, a feat that cannot be accomplished using fluorescent

---

[4] Similarly, the Court also stated that "Dr. Backman's conclusion that Southern would be inoperable if used with fluorescent labels is premised on an error of law—the assumption that it must be possible to physically combine and incorporate all elements from multiple references." (Order at 34:7–10.)

[5] Dr. Backman couched his opinion regarding inoperability in terms of "teaching away," rather than "motivation to combine," because CGI did not argue obviousness based on Southern in its motion. But his opinion regarding inoperability is equally applicable to the question of motivation to combine: it cannot be disputed that one of ordinary skill in the art would not have been motivated to combine references if doing so would result in an inoperable method.

labels. (Exh. D ¶¶ 30–34; Exh. B, Southern at 7:3–8:35.) Notably, Southern explains that the "reporter groups could take many forms, *the main consideration is the need to read the composition or sequence of the tag by mass spectrometry.*" (Exh. B at 7:3–6 (emphasis added).) Thus, Southern never suggests that fluorescent labels could serve as a substitute for his mass tags.

Expert testimony may be cited to "keep open certain questions of fact" at the summary judgment stage. *KSR*, 550 U.S. at 427. "Although expert testimony regarding motivation to combine is not always required," it may be especially important where "the technology at issue . . . is not the type of technology where common sense would provide the motivation to combine [multiple] references." *Kinetic Concepts*, 688 F.3d at 1369 (reversing district court's grant of JMOL).

The evidence presented by Illumina, including Dr. Backman's opinion, at a minimum creates a genuine issue of disputed material fact about whether Southern can be combined with Brenner to render claims 14 and 15 obvious. Thus, the Court erred in rejecting Dr. Backman's opinion that the use of Brenner's fluorescent labels would have rendered Southern's method inoperable.

### 3. Southern did not disclose the use of fluorescent labels as an embodiment of his method

In its decision, this Court stated that Southern disclosed the use of fluorescent labels as a "non-preferred embodiment" of Southern's spectrometry-based sequencing method. (Order at 29:27–30:1.) We respectfully submit, however, that the Court misunderstood what Southern actually teaches. Southern does *not* teach that one could use fluorescent labels in his method or indicate fluorescent labels as a "non-preferred embodiment." Southern mentions the use of fluorescent labels only in regard to the "array-based" techniques that were prior art to Southern. The passage in Southern that the Court cites teaches only that "existing array-based methods" used fluorescence as a detection method; neither in that passage nor anywhere else did Southern suggest that fluorescent labels could be an acceptable alternative to the

"mass tags" that could be used with mass spectrometry in Southern's mass spectrometry-based method. (Exh. B at 23:5–8.)

In contrast to that prior art, Southern's claimed invention is specifically limited to the use of "reporter groups adapted for detection by mass spectrometry." (*Id.* at 54:9.) Indeed, Southern is not specifically directed to a method of sequencing nucleic acids; rather, his invention is directed to a new labeling method using "mass tags" detectable by mass spectrometry. (*Id.* at 1:1–33; 2:9–36.) Because Southern's claimed invention was limited to mass spectrometry, the use of fluorescent labels was not (indeed, could not be) an embodiment of Southern's invention. (*Id.* at 7:3–6.)

Moreover, Southern describes "mass tags" and mass spectrometry as "***adding*** the potential to read the sequences of tags." (*Id.* at 23:10–11 (emphasis added).) By saying that "mass tag"-based detection "added" the potential ability to read the sequence of a polynucleotide to Southern's sequencing method, Southern taught that the fluorescence-based detection methods of the prior art would ***not*** work in Southern's sequencing method to read the sequence of a polynucleotide. Indeed, instead of teaching that fluorescent labels could be used in his method, Southern teaches that the use of fluorescent labels is one of the "major ***drawbacks*** of existing array-based methods." (*Id.* at 22:22–23; 23:5–11 (emphasis added).)

The "scope and content" of the Southern prior art is a question of fact, not a question of law, and because Southern expressly describes only a mass spectrometry-based method and does not teach that fluorescent labels could be an acceptable embodiment for his spectrometry-based method, there is at least a genuine issue of material fact about whether the scope and content of Southern includes the use of fluorescent labels. *See, e.g.*, *Kinetic Concepts*, 688 F.3d at 1360. This precludes summary judgment.

### 4. Neither CGI nor the Court cited evidence supporting a reason to combine Southern and Brenner, which is a disputed factual issue

Even assuming the combination of Southern and Brenner disclosed "all of the limitations of the asserted claims," CGI must still "proffer *evidence* indicating *why* a person having ordinary skill in the art would combine the references to arrive at the claimed invention." *Kinetic Concepts*, 688 F.3d at 1366 (emphases added). "Significantly, whether there is a reason to combine prior art references is a question of fact." *Id.* at 1367; *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351 (Fed. Cir. 2001) ("Whether a motivation to combine prior art references has been demonstrated is a question of fact."). "Under the correct analysis, any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *KSR*, 550 U.S. at 420.

Here, neither CGI nor the Court identified *any* "need or problem" that would have motivated a person of ordinary skill in the art at the time of the invention to combine Southern's spectrometry-based sequencing method with the fluorescent labels disclosed in Brenner. Southern teaches the use of mass tags for a particular purpose. Nowhere did Southern, Brenner, or any other reference in the record teach that there was a need or problem with Southern's mass-tag approach that needed to be resolved, which would motivate one of skill in the art to attempt to substitute the mass tags of Southern with the fluorescent labels of Brenner. As discussed above, Southern never even suggests that fluorescent labels could be used in his spectrometry-based sequencing method: to the contrary, Southern mentions fluorescent labels as a feature of different "array-based" prior-art methods and teaches that the use of fluorescent labels is one of the "major *drawbacks* of existing array-based methods." (Exh. B at 22:22–23; 23:5–11 (emphasis added).)

The Court ruled that the correct inquiry is whether a person of ordinary skill in the art "would find claims disclosing fluorescent tags in DNA sequencing obvious." (Order at 34:17.) Respectfully, this is not the correct inquiry. It is true that the use of

fluorescent labels was known in the field of sequencing. The correct inquiry, however, is whether a person of ordinary skill in the art would have been motivated to specifically combine Southern's spectrometry-based method with fluorescent labels: "[S]ome kind of motivation must be shown from some source, so that the jury can understand why a person of ordinary skill would have thought of either combining two or more references or modifying one to achieve the patented method." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1374 (Fed. Cir. 2008).

Thus, we respectfully submit that the Court improperly relied on hindsight because there is no evidence of any need or problem that would have motivated a person of ordinary skill to combine Southern's spectrometry-based sequencing method with Brenner's fluorescent labels to yield Macevicz's claimed inventions. Even after *KSR*, courts must "be careful not to allow hindsight reconstruction of references to reach the claimed invention without any explanation as to how or why the references would be combined to produce the claimed invention." *Kinetic Concepts*, 688 F.3d at 1368 (quoting *Innogenetics*, 512 F.3d at 1374 n.3). To prove obviousness, this explanation must include "evidence articulating why a person having ordinary skill in the art would combine the primary references to obtain the disclosed inventions." *Id.* at 1368–69 (reversing district court's grant of JMOL where record was "devoid of any reason someone would combine" references).

As discussed above, Southern does not disclose the use of fluorescent labels in connection with his mass spectrometry-based method, and the record is completely devoid of any explanation as to why a person of ordinary skill would have been motivated by any need or problem to use fluorescent labels in Southern's method, instead of the mass-spectrometry-based "mass tags," which Southern discloses and claims. *See In re Fritch*, 972 F.2d 1260, 1266 (Fed. Cir. 1992) ("The mere fact that the prior art may be modified . . . does not make the modification obvious unless the prior art suggested the desirability of the modification.").

Indeed, as noted above, rather than suggesting that fluorescent labels might

solve some need or problem in his mass spectrometry-based method, Southern touts the features of his "mass tags" detection method and describes fluorescent and radioactive labels only as a "drawback" of existing (non-ligation-, non-mass-spectrometry-based) methods. (Exh. B at 22:21–23:11.) There was nothing in Brenner that suggested that fluorescent labels might solve some problem or need in Southern's spectrometry-based method.

Because there is no evidence in the record of a need or problem that would have motivated a person of ordinary skill in the art to use Brenner's fluorescent labels in Southern's method to yield Macevicz's claimed inventions, this Court's decision invalidating claims 14 and 15 was error and should be reconsidered and withdrawn.[6]

### B. Factual disputes regarding Whiteley preclude summary judgment

#### 1. Whiteley did not disclose "repeating" because it did not disclose "repeating" the ligation step

The Court ruled that because Whiteley disclosed the possibility of using the same initializing oligonucleotide in "sequential reactions" (referred to by the Court as "same-sequence initializing oligonucleotide repeating"), it teaches one of the forms of "repeating" contemplated by the Court's claim construction. (Order at 42:17–43:2.) We respectfully submit that the Court misinterpreted the (undisputed) method disclosed in Whiteley, or misapplied the limitations of claim 1.

Step (a) in claim 1 of the '597 patent requires "extending an initializing oligonucleotide" by "ligating an oligonucleotide probe" to that initializing oligonucleotide (either a new initializing oligonucleotide or the same initializing oligo

---

[6] Although the Court only analyzed Brenner in the context of its possible combination with Southern to render various claims obvious, the Court also seemed to suggest that Illumina did not contest that Brenner itself renders claims 14–19 obvious. (Order at 44:12.) Because claims 14 and 15 depend from '597 claim 1, Illumina focused its arguments regarding Brenner on claims 1, 9, and 10 (*i.e.*, because Brenner could not render claim 1 obvious, it could not possibly render claims 14 and 15 obvious, which contain additional limitations beyond those in claim 1). However, Illumina did *not* concede that claims 14 and 15 are rendered obvious by Brenner, and we respectfully request that the Court amend its Order to clarify that it is not invalidating claims 14 and 15 based on Brenner alone.

used in an earlier step) to "form an extended duplex." (Exh. A at 21:28–30.) The Court's "same-sequence" ruling appears to assume that Whiteley teaches repeating step (a) with multiple probes. But Whiteley does *not* teach repeating step (a) under *any* circumstances.

Instead, in Whiteley's separate, sequential reactions, only one of the "diagnostic" probes used in only *one* of the two reactions contains a nucleotide that is complementary to the unknown nucleotide being interrogated in the target, so only *that* probe can be successfully ligated to the initializing oligo; the diagnostic probe used in the *other* reaction does not contain a nucleotide complementary to the interrogated nucleotide in the target, so that probe can*not* be ligated to the initializing oligo. Thus, only *one* of the probe reactions involves "extending," "ligating," and "forming an extended duplex," as required under step (a) of claim 1.

As Dr. Backman explains, Whiteley interrogates a single nucleotide in a target polynucleotide. (Exh. D ¶ 37–38.) That single position will be occupied by only one of two known bases, either the "normal" base or a "mutated" base. (*Id.* ¶ 37.) Whiteley uses a first "diagnostic" probe to test for the "normal" base, and in a second, separate reaction, uses a second "diagnostic" probe to test for the "mutated" base. (*Id.*) If the base at the position being interrogated is the "normal" base, then the first probe will be ligated to the initializing oligo, but the second probe will not. (*Id.*) On the other hand, if the base is the mutated base, the second probe will ligate, but the first will not. (*Id.*) Even CGI's expert, Dr. Metzker, acknowledged that there would be "no ligation" in the "repeat" step of the Whiteley method. (Exh. E ¶ 60 (figure).)

Thus, in Whiteley, even if the first and second diagnostic probes are used sequentially, only one probe will be ligated to the initializing oligo to create an extended duplex. Accordingly, under Whiteley's method, step (a) would *never* be repeated. This distinction creates at least a genuine issue of disputed material fact about whether Whiteley discloses "repeating" the steps of claim 1 of the '597 patent.

### 2. Whiteley does not teach "repeating" "until the *sequence of nucleotides* is determined" because Whiteley did not determine a "sequence"

We respectfully submit that in granting summary judgment that Whiteley anticipates '597 claim 1, the Court resolved genuine issues of disputed material fact regarding whether Whiteley discloses a method of "identifying a sequence of nucleotides" or repeating "until the sequence of nucleotides is determined."

Claim 1 calls for repetitive cycles "until the sequence of nucleotides is determined." It cannot be disputed that a *single* nucleotide is not a *sequence* of nucleotides. Whiteley teaches a method of identifying a single unknown nucleotide, not a *sequence* of nucleotides. (Exh. D ¶¶ 37–38.) According to Dr. Backman, in Whiteley, "[b]oth of the probes correspond to a *known* DNA sequence, except at the base where the probes are designed to meet." (*Id.* ¶ 37:5–7 (emphasis added).) As Dr. Backman explained, "[o]ne of ordinary skill in the art would have understood that determining the identity of a single base is not determining the identity of a sequence of a polynucleotide." (*Id.* ¶ 41.) Dr. Backman further explained that Whiteley is directed to "detection of single-base differences, or mutations," and thus does not teach determining a sequence. (*Id.* ¶¶ 37–44; *see also* Exh. C, Whiteley at 1:6–10.)

The Court ruled, however, that Whiteley teaches identification of a *sequence* of nucleotides, because a sequence is determined when "probes bind at adjacent positions on the target" sequence. (Order at 43:11.) We respectfully submit that the Court erred in ruling that Whiteley disclosed "repeating," because Dr. Backman's opinion raises a genuine issue of disputed material fact regarding the scope and content of the Whiteley reference, which this Court cannot resolve on summary judgment.

Moreover, claim 1 cannot cover Whiteley's method, because during the original examination of the '597 patent, Illumina distinguished single-nucleotide "sequencing," or detection of single-nucleotide polymorphisms ("SNPs"), using an oligonucleotide ligation assay ("OLA") like that taught in Whiteley. The original

1 patent examiner initially rejected claim 1 as anticipated by U.S. Patent No. 5,679,524 to Nikiforov. (Exh. G at 2–3.) The examiner explained that Nikiforov teaches detection of a nucleotide at a "preselected single nucleotide site" by hybridizing "first and second oligonucleotides" to the "target molecule," "ligating the first and second oligonucleotides," and "determining the identity of the nucleotide of the preselected site." (*Id.* at 3.) In response, Illumina successfully distinguished Nikiforov's method because it "does not teach 'repeating steps (a) and (b) until the sequence of nucleotides is determined,' as recited in the present claim." (Exh. H at 3.)

Illumina further explained that because Nikiforov "identifies only a single nucleotide, not a sequence of nucleotides, there would be no need for such repetition." (*Id.*) Thus, Illumina distinguished identification of a single unknown nucleotide using an OLA method of hybridizing two probes and ligating them together. In this respect, this method of hybridizing and ligating probes with known sequences to detect a single unknown nucleotide is the same as that taught in Whiteley (Exh. D ¶ 37), which Illumina once again distinguished during reexamination of the '597 patent (Exh. J at 14–16).[7]

Although the Court suggests that Whiteley teaches detection of a sequence of nucleotides, we respectfully submit that, as Dr. Backman explains, Whiteley only teaches detection of single-nucleotide SNPs, just like Nikiforov. Given Illumina's distinguishing of single-nucleotide detection in an OLA method just like Whiteley's, Illumina would not be able to assert claim 1 against a party that practices a SNP-detection method like that disclosed in Whiteley. *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("Such a use of the prosecution history ensures that claims are not construed one way in order to obtain their allowance and in a different

---

[7] Although Illumina respectfully disagrees with the Court's ruling during claim construction that Illumina did not disavow "conditional" repeating during the reexamination of the '597 patent, Illumina is not asking the Court to revisit that decision at this time.

way against accused infringers.").[8] Because the Whiteley method cannot infringe the claims of the '597 patent, Whiteley likewise cannot serve as anticipating prior art. *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1324 (Fed. Cir. 2001) ("The tests for infringement and anticipation are very similar, and that which would literally infringe if later in time anticipates if earlier than the date of invention." (citations omitted)).

Alternatively, this question raises a legal issue regarding the correct constructions of the phrases "identifying a sequence of nucleotides" and "until the sequence of nucleotides is determined." The parties never sought construction of these phrases or briefed this issue. Illumina never sought construction of these terms because it contends that the plain and ordinary meaning of these phrases requires determination of a ***sequence*** of nucleotides, *e.g.*, interrogation to determine the identity and order of *two or more* unknown nucleotides in the polynucleotide. Otherwise, these phrases and step (c) of the method would be meaningless. As discussed above, because Illumina distinguished the Nikiforov reference during the original examination of the '597 patent, construing "sequence of nucleotides" to mean a single unknown nucleotide is inconsistent with the prosecution history.

The Court's decision on Whiteley implicitly suggests that it was construing the phrases "identifying a sequence of nucleotides" and "until the sequence of nucleotides is determined" to require that only a single unknown nucleotide must be identified. (Order at 43:7–15.) We respectfully submit that this construction is inconsistent with the plain and ordinary meaning of the term and its use in the prosecution history. The Court should at least permit additional briefing on this legal issue before granting summary judgment of anticipation based on Whiteley.

---

[8] Cited with approval in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc) ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.")

### III. Conclusion

For all of the foregoing reasons, the Court should grant Illumina leave to file a motion for reconsideration of the Court's October 16, 2012 Order Granting Defendant's Motion for Partial Summary Judgment of Invalidity.

Dated: November 9, 2012        Respectfully submitted,

MARSHALL, GERSTEIN & BORUN LLP

By:  /s/ John R. Labbé
John R. Labbé (admitted *pro hac vice*)
Attorneys for Plaintiffs
ILLUMINA, INC. and SOLEXA, INC.