KEVIN M. FLOWERS (admitted *pro hac vice*)
MARK H. IZRAELEWICZ (admitted *pro hac vice*)
JOHN R. LABBE (admitted *pro hac vice*)
CULLEN N. PENDLETON (admitted *pro hac vice*)
AMANDA K. ANTONS (admitted *pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, Illinois 60606-6357
(312) 474-6300 (telephone)
(312) 474-0448 (facsimile)
E-Mail: kflowers@marshallip.com
E-Mail: mizraelewicz@marshallip.com
E-Mail: jlabbe@marshallip.com
E-Mail: cpendleton@marshallip.com
E-Mail: aantons@marshallip.com

GINA A. BIBBY
FOLEY & LARDNER LLP
975 Page Mill Road
Palo Alto, CA 94304
(650) 856-3700 (telephone)
(650) 856-3710 (facsimile)
E-Mail: gbibby@foley.com

Attorneys for Plaintiffs
ILLUMINA, INC. and SOLEXA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ILLUMINA, INC. and SOLEXA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>COMPLETE GENOMICS, INC.,<br><br>Defendant. | Case No. 3:10-cv-05542 EDL<br><br>**ILLUMINA'S MOTION FOR RECONSIDERATION OF ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING CLAIMS 14 AND 15**<br><br>Date:   January 8, 2013<br>Time:   9:00 A.M.<br>Judge:  Honorable Elizabeth D. Laporte<br>Place:  Courtroom E, 15th Floor |

# TABLE OF CONTENTS

I.  Introduction ........................................................................................................... 1

II. Argument ............................................................................................................... 3

    A.    The Court misapplied the law on "inoperability," erroneously
         excluded Dr. Backman's opinions, and resolved genuine issues of
         disputed material fact against Illumina regarding the combination of
         Southern with Brenner .............................................................................. 3

         1.    The Court misapplied the law regarding "inoperability" and
              resolved factual issues against Illumina ............................... 4

         2.    The Court erred in excluding Dr. Backman's opinions regarding
              inoperability, which raise genuine issues of disputed material
              fact ........................................................................................ 6

         3.    Southern did not disclose the use of fluorescent labels as an
              embodiment of his method ..................................................... 8

         4.    Neither CGI nor the Court cited evidence supporting a reason to
              combine Southern and Brenner, which is a disputed factual
              issue .................................................................................... 10

         5.    There is no reason to modify Southern's sequencing method to
              detect only one base at a time ............................................ 13

    B.    Factual disputes regarding Whiteley preclude summary judgment ........ 14

         1.    Whiteley did not disclose "repeating" because it did not disclose
              "repeating" the ligation step ............................................... 14

         2.    Whiteley does not teach "repeating" "until the *sequence of*
              *nucleotides* is determined" because Whiteley did not determine a
              "sequence" ......................................................................... 15

III. Conclusion ......................................................................................................... 19

# TABLE OF AUTHORITIES

CASES

*Chimie v. PPG Indus., Inc.,*
    402 F.3d 1371 (Fed. Cir. 2005)...................................................................18

*In re Billingsley,*
    279 F.2d 689 (C.C.P.A. 1960) ....................................................................5

*In re Fritch,*
    972 F.2d 1260 (Fed. Cir. 1992)..................................................................12

*In re Gordon,*
    733 F.2d 900 (Fed. Cir. 1984)....................................................................4

*In re ICON Health & Fitness, Inc.,*
    496 F.3d 1374 (Fed. Cir. 2007)...................................................................5

*In re Keller,*
    642 F.2d 413 (C.C.P.A. 1981) ....................................................................5

*In re Ratti,*
    270 F.2d 810 (C.C.P.A. 1959) ....................................................................5

*In re Wood,*
    599 F.2d 1032 (C.C.P.A. 1979) ..................................................................5

*Innogenetics, N.V. v. Abbott Labs.,*
    512 F.3d 1363 (Fed. Cir. 2008)..................................................................11

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.,*
    688 F.3d 1342 (Fed. Cir. 2012)...............................................4, 6, 7, 8, 10, 11

*KSR Int'l Co. v. Teleflex Inc.,*
    550 U.S. 398 (2007) .........................................................................6, 8, 10

*McGinley v. Franklin Sports, Inc.,*
    262 F.3d 1339 (Fed. Cir. 2001)..................................................................10

*Mycogen Plant Sci. v. Monsanto Co.,*
    243 F.3d 1316 (Fed. Cir. 2001)..................................................................19

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)..................................................................19

*Power-One, Inc. v. Artesyn Techs., Inc.,*
    599 F.3d 1343 (Fed. Cir. 2010)....................................................................6

*Spectralytics, Inc. v. Cordis Corp.,*
    649 F.3d 1336 (Fed. Cir. 2011)....................................................................7

*Tec Air, Inc. v. Denso Mfg. Mich., Inc.,*
    192 F.3d 1353 (Fed. Cir. 1999).................................................................4, 6

*Uniroyal, Inc. v. Rudkin-Wiley Corp.,*
    837 F.2d 1044 (Fed. Cir. 1988)....................................................................4

1

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 8, 2013 at 9:00 a.m., or as soon thereafter as the matter may be heard, Plaintiffs Illumina, Inc. and Solexa, Inc. (collectively, "Illumina"), by and through their counsel, will appear before the Honorable Elizabeth D. Laporte in Courtroom E, 15th Floor, of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, and move the Court for reconsideration of its October 16, 2012 ruling that claims 14 and 15 of U.S. Patent No. 6,306,597 ("the '597 patent") are invalid (Docket No. 197). Under Local Rule 7-9, the Court granted Illumina leave to file this motion for reconsideration (Docket No. 204). In support of its motion, Illumina submits the following Memorandum of Points and Authorities, the Declaration of John R. Labbé, and its accompanying exhibits.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   Introduction

Illumina respectfully requests that the Court reconsider its October 16, 2012 ruling that claims 14 and 15 of the '597 patent are invalid (Docket No. 197). Under Local Rule 7-9(b)(3), Illumina respectfully submits that the Court's rulings represent a manifest failure to consider material facts and dispositive legal arguments and should be reconsidered and withdrawn.[1]

In its Motion for Summary Judgment of Invalidity, CGI did not even argue that claims 14 and 15 were rendered obvious by Southern combined with Brenner, and did not rely on the caselaw regarding obviousness on which the Court relied in reaching its decision. Thus, Illumina never had reason or opportunity to fully brief this issue.

Illumina respectfully submits that the Court misinterpreted and thus misapplied the caselaw regarding "inoperability." Although the Court cited cases

---

[1] Although this Motion is limited to certain aspects of the Court's ruling regarding claims 14 and 15, Illumina respectfully disagrees with other aspects of the Court's ruling and reserves its right to raise additional issues on appeal.

1   saying that the inability to "bodily incorporate" a structure from one prior-art

2   reference into the structure of another reference does not wholly preclude combining

3   those references in an obviousness analysis, those cases do not hold that

4   "inoperability" is irrelevant.

5       Instead, as the Federal Circuit has explained in other cases, if combining

6   references would render the primary reference "inoperable for its intended purpose,"

7   or change the "principle of operation" of the reference, that ***precludes*** a finding of

8   obviousness. Because the Court did not appear to consider this doctrine, the Court

9   discounted the opinions of Illumina's expert, Dr. Backman, which at a minimum raise

10  genuine issues of disputed material fact regarding inoperability and obviousness.

11      In addition, Illumina respectfully submits that the Court misunderstood the

12  teachings of the Southern reference. The Court stated that Southern taught

13  fluorescent labels as a "non-preferred" embodiment. That is incorrect. Southern did

14  not disclose fluorescent labels as any type of embodiment—non-preferred or

15  preferred. While Southern discussed the drawbacks of using fluorescent labels in

16  other prior-art methods, nowhere does Southern suggest that fluorescent labels could

17  or should be used in Southern's claimed "mass tag" invention. In fact, using

18  fluorescent labels in Southern's method would have rendered Southern's invention

19  inoperable for its intended purpose and changed its principle of operation.

20      Thus, Illumina respectfully submits that the Court should reconsider and

21  withdraw its decision finding claims 14 and 15 obvious over Southern and Brenner,

22  because that decision necessarily resolved genuine issues of disputed material fact

23  (*e.g.*, inoperability) against Illumina regarding (i) the scope and content of the prior

24  art; and (ii) whether one of ordinary skill in the art would have been motivated to

25  combine the method disclosed in Southern with the fluorescent labels disclosed in

26  Brenner.

27      Similarly, the Court resolved genuine issues of disputed material fact, and

28  apparently did not consider relevant questions of law (*e.g.*, claim construction), in

concluding that Whiteley anticipates '597 claim 1.

First, Whiteley did not disclose the "same-sequence initializing oligonucleotide" form of "repeating" because only *one* of the two probes used in Whiteley's two cycles can possibly match the target sequence and be ligated to the "initializing" oligonucleotide. Thus, Whiteley cannot have satisfied the "repeating" limitation regarding ligation; *i.e.*, Whiteley does not repeat step (a), which requires ligation.

Second, Whiteley's method only identifies a *single* nucleotide, not a "sequence" of nucleotides. Illumina submitted expert testimony explaining that the single nucleotide detection taught in Whiteley does not identify a *sequence* of nucleotides. Moreover, during prosecution and then again during reexamination, Illumina distinguished the very method of single-nucleotide detection ("OLA") taught in Whiteley, so Whiteley cannot satisfy claim 1.

Thus, Illumina respectfully submits that the Court should reconsider and withdraw its decision regarding Whiteley because that decision necessarily resolved factual and legal issues against Illumina regarding whether Whiteley disclosed "repeating" and the identification of a "sequence."

## II.  Argument

### A.  The Court misapplied the law on "inoperability," erroneously excluded Dr. Backman's opinions, and resolved genuine issues of disputed material fact against Illumina regarding the combination of Southern with Brenner

Although the Court found Southern insufficient "at the summary judgment stage to completely anticipate claims 14 and 15," the Court found claims 14 and 15 rendered obvious by the combination of Southern with Brenner (Order at 31:6–7, 36).

Significantly, CGI *never* raised this combination in its motion for summary judgment; indeed, CGI only cursorily mentioned it in passing in its reply brief.

Although obviousness is a question of law, it is based on underlying factual questions: "A party seeking to invalidate a patent on the basis of obviousness must 'demonstrate 'by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed

invention . . . ."" *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012) (quoting *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009)) (reversing district court's grant of JMOL of obviousness).

Here, CGI never even discussed these factual issues in its motion papers. CGI presented **no** evidence, much less ***clear-and-convincing*** evidence, to explain why one of ordinary skill would have had any reason to combine Southern's mass spectrometry-based method with Brenner's fluorescent labels.

### 1. The Court misapplied the law regarding "inoperability" and resolved factual issues against Illumina

The Court stated that obviousness does not require that one be able to "bodily incorporate" the features of one prior-art reference into another. (Order at 32:8.) However, the Federal Circuit has held that this is only *part* of the obviousness question: the Federal Circuit has also held that combining references must not render the primary reference "inoperable for its intended purpose." *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1360 (Fed. Cir. 1999) (affirming jury verdict where jury implicitly found that combination of prior-art references would have rendered prior art "inoperable for its intended purpose"); *see also Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1052 (Fed. Cir. 1988) ("In view of the antithetical principles of operation and the absence of any teaching or suggestion to combine these prior art devices, there is no apparent basis for the district court's conclusion that it would have been obvious to one skilled in the art to make the combination."); *In re Gordon*, 733 F.2d 900, 902 (Fed. Cir. 1984) (citing inoperability as a relevant fact in concluding that there was no evidence of "motivation to one of ordinary skill in the art to employ [a prior-art] apparatus in an upside down orientation").

As explained in the Patent Office's Manual of Patent Examining Procedure,

> "The test for obviousness is not whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference. . . . Rather, the test is what the combined teachings of those references would have suggested to those of ordinary skill in the art." *In re Keller*, 642 F.2d 413, 425 (C.C.P.A. 1981). . . .
>
> ***However, the claimed combination cannot change the principle of operation of the primary reference or render the reference inoperable for its intended purpose.***

M.P.E.P. § 2145 (Exh. F at 2100-172)[2] (emphasis added); *see also In re Ratti*, 270 F.2d 810, 813 (C.C.P.A. 1959) (reversing obviousness rejection where "suggested combination of references would require a substantial reconstruction and redesign of the elements shown in [the primary reference] as well as a change in the basic principles under which the [reference's] construction was designed to operate").

The cases the Court cited did not hold that inoperability is irrelevant to the obviousness inquiry. For example, in *In re ICON Health & Fitness*, the Federal Circuit acknowledged "the principle that a reference teaches away from a combination when using it in that combination would produce an inoperative result." *In re ICON Health & Fitness, Inc.*, 496 F.3d 1374, 1382 (Fed. Cir. 2007). In that case, the court ultimately concluded that one of ordinary skill in the art would know to "size the components" (a spring) correctly for their intended purpose. *Id.* But there is ***no*** evidence here showing that incorporating fluorescent labels into Southern's spectrometry-based method is in any way analogous to tweaking the strength of a spring.

The remaining three cases the Court cited regarding "bodily incorporation" do *not* say that "inoperability" is *irrelevant* to the obviousness inquiry.[3] As the Court noted, the critical question raised in each of these cases is "what the combined

---

[2] All exhibits cited in this motion are attached to the Declaration of John R. Labbé filed contemporaneously with this motion.

[3] *In re Keller*, 642 F.2d 413 (C.C.P.A. 1981); *In re Wood*, 599 F.2d 1032 (C.C.P.A. 1979); *In re Billingsley*, 279 F.2d 689 (C.C.P.A. 1960) (cited in Order at 32–36).

1 teachings of the references would have suggested to those of ordinary skill in the art."

2 (Order at 33:13–15; 33:26–27.) Answering this question requires factual findings

3 regarding the scope and content of the prior art, and whether one of ordinary skill in

4 the art would have had a reason to combine the references. *Kinetic Concepts, Inc. v.*

5 *Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012); *Power-One, Inc. v.*

6 *Artesyn Techs., Inc.*, 599 F.3d 1343, 1351 (Fed. Cir. 2010).

7     Moreover, the "bodily incorporation" cases the Court cited are either appeals to

8 or from the Board of Patent Appeals and Interferences, and were therefore decided

9 under a different standard of review than is applicable here: in an appeal to the

10 Board, the examiners in the Patent and Trademark Office (rather than a jury, as in

11 this Court) are the finders of fact, and their findings of fact are accepted so long as

12 there is any evidence to support them; the clear-and-convincing burden of proof does

13 not apply. In contrast, summary judgment of obviousness in a district court is only

14 appropriate when the factual issues underlying the obviousness inquiry are not in

15 "material dispute." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426–27 (2007).

16     **2.**    **The Court erred in excluding Dr. Backman's opinions regarding inoperability, which raise genuine issues of disputed material fact**

17

18     The Court discounted Dr. Backman's opinion, explaining that the "disputes

19 raised by Illumina's expert about teaching away and inoperability are issues of law,

20 rather than disputes of fact." (Order at 36:6–7.)[4] We respectfully submit that the

21 Court misapplied the law. The issue of inoperability, which goes to the question of

22 whether there was a reason to combine, is an issue of fact, not law. *Tec Air, Inc. v.*

23 *Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1360 (Fed. Cir. 1999) (affirming jury verdict

24 where jury implicitly found that combination of prior-art references would have

25 rendered prior art "inoperable for its intended purpose"); *see also Kinetic Concepts*,

26 ───────────────

27     [4] Similarly, the Court also stated that "Dr. Backman's conclusion that Southern would be inoperable if used with fluorescent labels is premised on an error of law—the assumption that it must be possible to physically combine and incorporate all elements from multiple

28 references." (Order at 34:7–10.)

688 F.3d at 1367 ("Significantly, whether there is a reason to combine prior art references is a question of fact."); *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1343 (Fed. Cir. 2011) ("Whether the prior art teaches away from the claimed invention is a question of fact . . . .").

There is no evidence here that one of ordinary skill at the time of the invention would have had a reason or would have been motivated to combine Southern's mass-spectrometry-based method with Brenner's fluorescent labels; the ***only*** evidence in the record regarding this issue is Dr. Backman's opinion that one of ordinary skill would ***not*** have been motivated to combine Southern's method with Brenner's fluorescent labels, because they would have known that doing so would have rendered Southern's method inoperable. (Exh. D, Backman Decl. ¶¶ 32–34.)[5]

As Dr. Backman explained, the use of fluorescent labels would have rendered Southern's method inoperable because they are incompatible with mass spectrometry. The use of fluorescent labels would have changed the whole principle of operation of Southern because Southern teaches a method for identifying up to six bases in a single cycle using mass tags, a feat that cannot be accomplished using fluorescent labels. (Exh. D ¶¶ 30–34; Exh. B, Southern at 7:3–8:35.) Dr. Backman further described this distinction:

> Southern depends on the ability of a mass-tag labeling system to read numerous bases at once, whereas Macevicz identifies one base in each cycle. It would not have been obvious to one of ordinary skill in the art to take the use of fluorescence from the art, and add it to Southern to create Macevicz's claimed method. In fact, doing so would have rendered Southern inoperable because fluorescent labels (even today) cannot be used in a sequencing method to determine more than one base at a time.

(Exh. D ¶ 32.) Southern further underscores that the principle of operation of his

---

[5] Dr. Backman couched his opinion regarding inoperability in terms of "teaching away," rather than "motivation to combine," because CGI did not argue obviousness based on Southern in its motion. But his opinion regarding inoperability is equally applicable to the question of motivation to combine: it cannot be disputed that one of ordinary skill in the art would not have been motivated to combine references if doing so would result in an inoperable method.

method relies exclusively on mass spectrometry by stating that although the "reporter groups could take many forms, *the main consideration is the need to read the composition or sequence of the tag by mass spectrometry.*" (Exh. B at 7:3–6 (emphasis added).) Thus, Southern never suggests that fluorescent labels could serve as a substitute for his mass tags. Southern's principle of operation requires the use of mass tags and mass spectrometry.

Expert testimony may be cited to "keep open certain questions of fact" at the summary judgment stage. *KSR*, 550 U.S. at 427. "Although expert testimony regarding motivation to combine is not always required," it may be especially important where "the technology at issue . . . is not the type of technology where common sense would provide the motivation to combine [multiple] references." *Kinetic Concepts*, 688 F.3d at 1369 (reversing district court's grant of JMOL).

The evidence presented by Illumina, including Dr. Backman's opinion, at a minimum creates a genuine issue of disputed material fact about whether Southern can be combined with Brenner to render claims 14 and 15 obvious. Thus, the Court erred in rejecting Dr. Backman's opinion that the use of Brenner's fluorescent labels would have rendered Southern's method inoperable.

### 3. Southern did not disclose the use of fluorescent labels as an embodiment of his method

In its decision, this Court stated that Southern disclosed the use of fluorescent labels as a "non-preferred embodiment" of Southern's spectrometry-based sequencing method. (Order at 29:27–30:1.) We respectfully submit, however, that the Court misunderstood what Southern actually teaches. Southern does *not* teach that one could use fluorescent labels in his method or indicate that fluorescent labels are a "non-preferred embodiment." Rather, Southern teaches that his invention *requires* the use of mass tags. (Exh. B at 7:3–6.)

Southern mentions the use of fluorescent labels only in regard to the "array-based" techniques that were prior art to Southern. The passage in Southern that the

1    Court cites teaches only that "existing array-based methods" used fluorescence as a

2    detection method; neither in that passage nor anywhere else did Southern suggest

3    that fluorescent labels could be an acceptable alternative to the "mass tags" that

4    could be used with mass spectrometry in Southern's mass spectrometry-based

5    method. (Exh. B at 23:5–8.)

6        In contrast to that prior art, Southern's claimed invention is specifically limited

7    to the use of "reporter groups adapted for detection by mass spectrometry." (*Id.* at

8    54:9; *see also id.* at 7:3–6 ("The reporter groups could take many forms, the main

9    consideration is the need to read the composition or sequence of the tag by mass

10   spectrometry."); *id.* 14:2–3 ("The proposed molecular tags would be analysed by one of

11   several forms of mass spectrometry.").) Indeed, Southern is not specifically directed to

12   a method of sequencing nucleic acids; rather, his invention is directed to a new

13   labeling method using "mass tags" detectable by mass spectrometry. (*Id.* at 1:1–33;

14   2:9–36.)[6] Because Southern's claimed invention was mass spectrometry-based labels,

15   the use of fluorescent labels was not (indeed, could not be) an embodiment of

16   Southern's invention. (*Id.* at 7:3–6.)

17       Moreover, Southern describes "mass tags" and mass spectrometry as "***adding*** the

18   potential to read the sequences of tags." (*Id.* at 23:10–11 (emphasis added).) By saying

19   that "mass tag"-based detection "added" the potential ability to read the sequence of a

20   polynucleotide to Southern's sequencing method, Southern taught that the

21   fluorescence-based detection methods of the prior art would ***not*** work in Southern's

22   sequencing method to read the sequence of a polynucleotide. (Exh. D, Backman Decl.

23   ¶ 29.) Indeed, instead of teaching that fluorescent labels could be used in his method,

24

25       [6] In fact, Southern is not limited to detecting nucleic acids; it can be applied to just

26   about any biological entity, such as proteins and sugars. (Exh. B at 2:9–15.) Southern's
     invention was a new labeling method using tags detectable by mass spectrometry (*see, e.g.,*

27   *id. at* 1:27–28; 2:34–36), which Southern described as being useful in any number of different
     applications. (*See, e.g., id.* at 2:9–15; 4:7–14.) Southern describes sequencing as just one of

28   the "Example applications" of his mass-tag method. (*Id.* at 15:16–21.)

1   Southern teaches that the use of fluorescent labels is one of the "major **drawbacks** of

2   existing array-based methods." (*Id.* at 22:22–23; 23:5–11 (emphasis added).)

3        The "scope and content" of the Southern prior art is a question of fact, not a

4   question of law, and because Southern expressly describes only a mass spectrometry-

5   based method and does not teach that fluorescent labels could be an acceptable

6   embodiment for his spectrometry-based method (in fact, suggesting the opposite),

7   there is at least a genuine issue of material fact about whether the scope and content

8   of Southern includes the use of fluorescent labels. *See, e.g.*, *Kinetic Concepts*, 688

9   F.3d at 1360. This precludes summary judgment.

10           **4.   Neither CGI nor the Court cited evidence supporting a reason to
                    combine Southern and Brenner, which is a disputed factual issue**

11

12        Even assuming the combination of Southern and Brenner disclosed "all of the

13   limitations of the asserted claims," CGI must still "proffer **evidence** indicating **why** a

14   person having ordinary skill in the art would combine the references to arrive at the

15   claimed invention." *Kinetic Concepts*, 688 F.3d at 1366 (emphases added).

16   "Significantly, whether there is a reason to combine prior art references is a question

17   of fact." *Id.* at 1367; *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351 (Fed. Cir.

18   2001) ("Whether a motivation to combine prior art references has been demonstrated

19   is a question of fact."). "Under the correct analysis, any need or problem known in the

20   field of endeavor at the time of invention and addressed by the patent can provide a

21   reason for combining the elements in the manner claimed." *KSR*, 550 U.S. at 420.

22        Here, neither CGI nor the Court identified **any** "need or problem" that would

23   have motivated a person of ordinary skill in the art at the time of the invention to

24   combine Southern's spectrometry-based sequencing method with the fluorescent

25   labels disclosed in Brenner. Southern teaches the use of mass tags for a particular

26   purpose. Nowhere did Southern, Brenner, or any other reference in the record teach

27   that there was a need or problem with Southern's mass-tag approach that needed to

28   be resolved, which would motivate one of skill in the art to attempt to substitute the

1    mass tags of Southern with the fluorescent labels of Brenner. As discussed above,

2    Southern never even suggests that fluorescent labels could be used in his

3    spectrometry-based sequencing method: to the contrary, Southern mentions

4    fluorescent labels as a feature of different "array-based" prior-art methods and

5    teaches that the use of fluorescent labels is one of the "major *drawbacks* of existing

6    array-based methods." (Exh. B at 22:22–23; 23:5–11 (emphasis added).)

7         The Court ruled that the correct inquiry is whether a person of ordinary skill in

8    the art "would find claims disclosing fluorescent tags in DNA sequencing obvious."

9    (Order at 34:17.) Respectfully, this is not the correct inquiry. Even if fluorescent

10   labels were known, the correct inquiry is whether a person of ordinary skill in the art

11   would have had a reason to specifically combine Southern's spectrometry-based

12   method with fluorescent labels: "[S]ome kind of motivation must be shown from some

13   source, so that the jury can understand why a person of ordinary skill would have

14   thought of either combining two or more references or modifying one to achieve the

15   patented method." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1374 (Fed. Cir.

16   2008).

17        Thus, we respectfully submit that the Court improperly relied on hindsight

18   because there is no evidence of any need or problem that would have motivated or

19   provided a reason for a person of ordinary skill to combine Southern's spectrometry-

20   based sequencing method with Brenner's fluorescent labels to yield Macevicz's

21   claimed inventions. Even after *KSR*, courts must "be careful not to allow hindsight

22   reconstruction of references to reach the claimed invention without any explanation

23   as to how or why the references would be combined to produce the claimed invention."

24   *Kinetic Concepts*, 688 F.3d at 1368 (quoting *Innogenetics*, 512 F.3d at 1374 n.3). To

25   prove obviousness, this explanation must include "evidence articulating why a person

26   having ordinary skill in the art would combine the primary references to obtain the

27   disclosed inventions." *Id.* at 1368–69 (reversing district court's grant of JMOL where

28   record was "devoid of any reason someone would combine" references).

As discussed above, Southern does not disclose the use of fluorescent labels in connection with his mass spectrometry-based method, and the record is completely devoid of any explanation as to why a person of ordinary skill would have been motivated by any need or problem to use fluorescent labels in Southern's method, instead of the mass-spectrometry-based "mass tags," which Southern discloses and claims. *See In re Fritch*, 972 F.2d 1260, 1266 (Fed. Cir. 1992) ("The mere fact that the prior art may be modified . . . does not make the modification obvious unless the prior art suggested the desirability of the modification.").

Indeed, as noted above, rather than suggesting that fluorescent labels might solve some need or problem in his mass spectrometry-based method, Southern touts the features of his "mass tags" detection method and describes fluorescent and radioactive labels only as a "drawback" of existing (non-ligation-, non-mass-spectrometry-based) methods. (Exh. B at 22:21–23:11.) There was nothing in Brenner that suggested that fluorescent labels might solve some problem or need in Southern's spectrometry-based method.

Because there is no evidence in the record of a need or problem that would have motivated a person of ordinary skill in the art to use Brenner's fluorescent labels in Southern's method to yield Macevicz's claimed inventions, this Court's decision invalidating claims 14 and 15 was error and we ask that it be reconsidered and withdrawn.[7]

---

[7] Although the Court only analyzed Brenner in the context of its possible combination with Southern to render various claims obvious, the Court also seemed to suggest that Illumina did not contest that Brenner itself renders claims 14–19 obvious. (Order at 44:12.) Because claims 14 and 15 depend from '597 claim 1, Illumina focused its arguments regarding Brenner on claims 1, 9, and 10 (*i.e.*, because Brenner could not render claim 1 obvious, it could not possibly render claims 14 and 15 obvious, which contain additional limitations beyond those in claim 1). However, Illumina did *not* concede that claims 14 and 15 are rendered obvious by Brenner, and we respectfully request that the Court amend its Order to clarify that it is not invalidating claims 14 and 15 based on Brenner alone.

5. **There is no reason to modify Southern's sequencing method to detect only one base at a time**

Dr. Metzker and the Court relied on the "sequencing" embodiment in Southern (Exh. B 14–19 & Figs. 4 & 5) to explain how Southern meets the "ligating," "identifying," and "repeating" elements of claim 1 (and thus of claims 14 and 15). (*See, e.g.*, Metzker Decl. ¶¶ 34–43; Order at 23.) Using fluorescence in this sequencing embodiment would fundamentally change Southern's sequencing method.

Southern's sequencing method involves identifying all bases in the probe (*i.e.*, at least six bases). Under the operation called "read code," Southern illustrates identifying all bases in the probe in Figure 5. (Exh. B Fig. 5; *see also* Backman Decl. ¶ 18.) It is also undisputed that fluorescence could only have been used to read a single base. (Backman Decl. ¶¶ 30, 32.)

Although Southern identifies at least six bases at a time, the Court's order concluded that "Southern itself says that its method can be used on a single base at a time." (Order at 35:11–12.) Illumina submits that there is nothing in Southern to support the conclusion that Southern's *sequencing method* can be used to identify only one base at a time. While the parties may not dispute (under the Court's claim construction) that Southern meets step (b) ("identifies one or more nucleotides of the polynucleotide"), this is because it meets the "or more" (*i.e.*, multiple bases) element. Southern's sequencing method, however, does not work on one base at a time.

Thus, in concluding that Southern's sequencing embodiment could use fluorescence, the Court, in essence, modified Southern from being able to identify every position in a probe (all six positions) to only detecting a single position of the probe. Illumina submits that this is contrary to the principle of operation taught in Southern. Southern does not teach a method of re-ligating the same probes multiple times to the same polynucleotide sequence to determine the identity of single bases at each of multiple positions. Instead, Southern only teaches a method of identifying all the bases covered by a probe in a single step. (Backman Decl. ¶ 32.)

1   Combining fluorescent tags with Southern would result in determining the

2   identity of a fraction (1/6th) of the bases in a target sequence, whereas Southern's

3   mass-tag method would identify all the bases. This represents a significant

4   modification to the principle of operation taught in Southern. For this reason, Dr.

5   Backman explained that a person of skill in the art would not have made this change.

6   (Backman Decl. ¶ 32.)

7   **B.   Factual disputes regarding Whiteley preclude summary judgment**

8   **1.   Whiteley did not disclose "repeating" because it did not disclose**
    **"repeating" the ligation step**

9

10   The Court ruled that because Whiteley disclosed the possibility of using the

11   same initializing oligonucleotide in "sequential reactions" (referred to by the Court as

12   "same-sequence initializing oligonucleotide repeating"), it teaches one of the forms of

13   "repeating" contemplated by the Court's claim construction. (Order at 42:17–43:2.)

14   We respectfully submit that the Court misinterpreted the (undisputed) method

15   disclosed in Whiteley, or misapplied the limitations of claim 1.

16   Step (a) in claim 1 of the '597 patent requires "extending an initializing

17   oligonucleotide" by "ligating an oligonucleotide probe" to that initializing

18   oligonucleotide (under the Court's claim construction, either to a new initializing

19   oligonucleotide or to the same initializing oligo used in an earlier step) to "form an

20   extended duplex." (Exh. A at 21:28–30.) The Court's "same-sequence" ruling appears

21   to assume that Whiteley teaches repeating step (a) with multiple probes. But

22   Whiteley does *not* teach repeating *step (a)* under *any* circumstances.

23   Instead, in Whiteley's separate, sequential reactions, only *one* of the "diagnostic"

24   probes used in only *one* of the two reactions contains a nucleotide that is

25   complementary to the unknown nucleotide being interrogated in the target, so only

26   *that* probe in *that* reaction can be successfully ligated to the initializing oligo; the

27   diagnostic probe used in the *other* reaction does not contain a nucleotide

28   complementary to the interrogated nucleotide in the target, so that probe can*not* be

ligated to the initializing oligo. Thus, only *one* of the probe reactions involves "extending," "ligating," and "forming an extended duplex," as required under step (a) of claim 1.

As Dr. Backman explains, Whiteley interrogates a single nucleotide in a target polynucleotide. (Exh. D ¶ 37–38.) That single position will be occupied by only one of two known bases, either the "normal" base or a "mutated" base. (*Id.* ¶ 37.) Whiteley uses a first "diagnostic" probe to test for the "normal" base, and in a second, separate reaction, uses a second "diagnostic" probe to test for the "mutated" base. (*Id.*) If the base at the position being interrogated is the "normal" base, then the first probe will be ligated to the initializing oligo, but the second probe will not. (*Id.*) On the other hand, if the base is the mutated base, the second probe will ligate, but the first will not. (*Id.*) Even CGI's expert, Dr. Metzker, acknowledged that there would be "no ligation" in the "repeat" step of the Whiteley method. (Exh. E ¶ 60 (figure).)

Thus, in Whiteley, even if the first and second diagnostic probes are used sequentially, only *one* probe will be ligated to the initializing oligo to create an extended duplex. Accordingly, in Whiteley's method, step (a) would *never* be repeated. This distinction creates at least a genuine issue of disputed material fact about whether Whiteley discloses "repeating" the steps of claim 1 of the '597 patent.

## 2. Whiteley does not teach "repeating" "until the *sequence of nucleotides* is determined" because Whiteley did not determine a "sequence"

We respectfully submit that in granting summary judgment that Whiteley anticipates '597 claim 1, the Court resolved genuine issues of disputed material fact regarding the scope and content of Whiteley, particularly whether Whiteley discloses a method of "identifying a sequence of nucleotides" or repeating "until the sequence of nucleotides is determined."

Claim 1 calls for repetitive cycles "until the sequence of nucleotides is determined." It cannot be disputed that a *single* nucleotide is not a *sequence* of nucleotides. Whiteley teaches a method of identifying a single unknown nucleotide,

1     not a *sequence* of nucleotides. (Exh. D ¶¶ 37–38.) According to Dr. Backman, in

2     Whiteley, "[b]oth of the probes correspond to a *known* DNA sequence, except at the

3     base where the probes are designed to meet." (*Id.* ¶ 37:5–7 (emphasis added).) As Dr.

4     Backman explained, "[o]ne of ordinary skill in the art would have understood that

5     determining the identity of a single base is not determining the identity of a sequence

6     of a polynucleotide." (*Id.* ¶ 41.) Dr. Backman further explained that Whiteley is

7     directed to "detection of single-base differences, or mutations," and thus does not

8     teach determining a sequence. (*Id.* ¶¶ 37–44; *see also* Exh. C, Whiteley at 1:6–10.)

9        The Court ruled, however, that Whiteley teaches identification of a *sequence* of

10    nucleotides, because a sequence is determined when "probes bind at adjacent

11    positions on the target" sequence. (Order at 43:11.) We respectfully submit that the

12    Court erred in ruling that Whiteley disclosed "repeating," because Dr. Backman's

13    opinion raises a genuine issue of disputed material fact regarding the scope and

14    content of Whiteley, which this Court cannot resolve on summary judgment.

15        The Court's decision on Whiteley implicitly suggests that it was construing the

16    phrases "identifying a sequence of nucleotides" and "until the sequence of nucleotides

17    is determined" to require that only a single unknown nucleotide must be identified.

18    (Order at 43:7–15.) We respectfully submit that this construction is inconsistent with

19    the plain and ordinary meaning of the term and its use in the prosecution history.

20        The parties never sought construction of these phrases or briefed this issue.

21    Illumina never sought construction of these terms because it contends that the plain

22    and ordinary meaning of these phrases requires determination of a **_sequence_** of

23    nucleotides, *e.g.*, interrogation to determine the identity and order of *multiple*

24    unknown nucleotides in the polynucleotide. Otherwise, these phrases and step (c) of

25    the claimed method would be meaningless, because the identification of a single

26    nucleotide in step (b) would constitute identifying a "sequence of nucleotides,"

27    rendering the limitation "until the sequence of nucleotides is determined" in step (c)

28    superfluous.

1    Moreover, based on the prosecution history, claim 1 cannot be construed to cover

2    Whiteley's method, because during the original prosecution of the '597 patent,

3    Illumina distinguished a method that is identical to that disclosed in Whiteley as not

4    teaching "repeating" "until the sequence of nucleotides is determined." Specifically,

5    Illumina distinguished single-nucleotide "sequencing," or detection of single-

6    nucleotide polymorphisms ("SNPs"), using an oligonucleotide ligation assay ("OLA")

7    like that taught in Whiteley. The original patent examiner initially rejected claim 1

8    as anticipated by U.S. Patent No. 5,679,524 to Nikiforov. (Exh. G at 2–3.) The

9    examiner explained that Nikiforov teaches detection of a nucleotide at a "preselected

10   single nucleotide site" by hybridizing "first and second oligonucleotides" to the "target

11   molecule," "ligating the first and second oligonucleotides," and "determining the

12   identity of the nucleotide of the preselected site." (*Id.* at 3.) This is exactly the method

13   that Whiteley teaches. (*See* Metzker Decl., Exh. E ¶ 26, lines 11–18.) In response,

14   Illumina successfully distinguished Nikiforov's method because it "does not teach

15   'repeating steps (a) and (b) until the sequence of nucleotides is determined,' as recited

16   in the present claim." (Exh. H at 3.)

17       Illumina further explained that because Nikiforov "identifies only a single

18   nucleotide, not a sequence of nucleotides, there would be no need for such repetition."

19   (*Id.*) Thus, Illumina distinguished its claimed method from OLA-type methods, which

20   identify a single unknown nucleotide by hybridizing two probes and ligating them

21   together, which includes both Nikiforov ***and*** Whiteley. (Exh. D ¶ 37.)

22       Illumina distinguished these single-nucleotide identification methods again

23   during reexamination of the '597 patent. (Exh. J at 14–16.) Illumina distinguished

24   over two separate embodiments of Martinelli. The Court's summary judgment order

25   focused on the disclaimer that Illumina made over the portion of Martinelli that

26

27

28

1   disclosed multiple rounds of SNP detection.[8] (Order at 42:4–5; Exh. J at 15–16.) As

2   the Court recognized in its claim construction order, however, Illumina also

3   distinguished an additional OLA disclosure in Martinelli that was only performed for

4   a single round:

5       In response to the rejection of claim 1 as anticipated by Martinelli
        and obvious over Landegren and Whiteley in view of Martinelli,
6       Illumina/Solexa distinguished Martinelli on the ground that
        Martinelli "did not disclose repeating the steps of its 'HLM'
7       method . . . [and] expressly taught that the HLM reaction was
        intended to be performed for only one cycle."

8

9   (Dkt. No. 122 at 4; *see also* Exh. J at 15.) Thus, during the reexamination, Illumina

10  distinguished OLA methods as being limited to identifying a single nucleotide,

11  explaining that "Martinelli, Whiteley, and Landegren each disclosed different

12  variations of a method to simultaneously assay one or more single-nucleotide

13  polymorphisms by hybridizing two probes onto a target sequence." (Exh. J at 14.)

14      Although the Court's Order suggests that Whiteley teaches detection of a

15  "sequence" of nucleotides, we respectfully submit that, as Dr. Backman explains,

16  Whiteley only teaches detection of single-nucleotide SNPs, just like the Nikiforov,

17  Martinelli, and other OLA methods that Illumina distinguished during prosecution

18  and reexamination. Because Illumina distinguished such methods from its claims,

19  Illumina's claims cannot be construed to cover such methods. For example, Illumina

20  would not be able to assert claim 1 against a party that practiced a single-nucleotide

21  (SNP)-detection method like that disclosed in Whiteley. *Chimie v. PPG Indus., Inc.*,

22  402 F.3d 1371, 1384 (Fed. Cir. 2005) ("Such a use of the prosecution history ensures

23  that claims are not construed one way in order to obtain their allowance and in a

24  ───────────────

25      [8] Illumina's statements about the "multiple round" portion of Martinelli was relevant to
    the Court's construction of "conditional repeating." The Court held that Illumina did not
26  disclaim "conditional" repeating during the reexamination because Illumina only
    "distinguished Martinelli as carrying out its method on different (non-overlapping and
27  noncontiguous) portions of the polynucleotide." (Order at 42:4–5.) Although Illumina
    respectfully disagrees with the Court's ruling that Illumina did not disavow "conditional"
    repeating during the reexamination of the '597 patent, Illumina is not asking the Court to
28  revisit that decision at this time.

different way against accused infringers.").[9] Because the Whiteley method cannot infringe the claims of the '597 patent, Whiteley likewise cannot anticipate those claims. *Cf. Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1324 (Fed. Cir. 2001) ("The tests for infringement and anticipation are very similar, and that which would literally infringe if later in time anticipates if earlier than the date of invention." (citations omitted)).

## III.   Conclusion

For all of the foregoing reasons, the Court should vacate its October 16, 2012 Order Granting Defendant's Motion for Partial Summary Judgment of Invalidity to the extent that it invalidated claims 14 and 15 of the '597 patent based on the Southern and/or Whiteley references.

Dated: November 30, 2012          Respectfully submitted,

                                  MARSHALL, GERSTEIN & BORUN LLP

                       By:   /s/ John R. Labbé
                             John R. Labbé (admitted *pro hac vice*)
                             Attorneys for Plaintiffs
                             ILLUMINA, INC. and SOLEXA, INC.

---

[9] Cited with approval in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc) ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.")